505 A.2d 858

**CANTERBURY RIDING CONDOMINIUM**

v.

**CHESAPEAKE INVESTORS, INC.**

**No. 568, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 10, 1986.

P. Michael Nagle (Laura E. Cohen, Susan L. Bayly and Hyatt & Rhoads, P.C., on brief), Washington, D.C., for appellant.

Samuel C. Steelman, Jr., Hyattsville (John D. Gilmore, Jr. and Nylen & Gilmore, on brief, Rockville), for appellee.

Argued before MOYLAN, WILNER and ROSALYN B. BELL, JJ.

MOYLAN, Judge.

The appellant, Canterbury Riding Condominium Council of Unit Owners, appeals from a judgment entered against it by the Circuit Court for Prince George's County, following the granting of a motion for summary judgment, in favor of the appellees—Chesapeake Investors, Inc.; Riley S. Merson; and Harry D. Barney—as to count two of the appellant's

amended declaration, alleging a breach of fiduciary duty. The circuit court ruled that suit was not filed within the applicable three-year statute of limitations and that the appellees, therefore, were entitled to judgment as a matter of law.

Canterbury Riding Condominium is a residential condominium development in Laurel, Howard County, Maryland. The appellant, the Council of Unit Owners of Canterbury Riding Condominium, consists of the individual unit owners, each of whom also owns a percentage of the common elements of the condominium.

The appellee Chesapeake Investors, Inc. is the final successor by merger to MCD Holdings, Inc.; MCD Enterprises, Inc.; and Residential Developers, Inc. In 1975, Residential Developers and MCD Enterprises developed, designed, planned, and constructed all of the buildings and common elements appertaining to the condominium units at Canterbury Riding Condominium, including but not limited to all foundations, bearing walls, perimeter walls, main walls, footings, roofs, walls, columns, girders, beams, supports, yards, streets, recreational facilities, and gardens; central services, such as power, light, gas, sewer, hot and cold water, and central heating; and all pipes, ducts, flues, chutes, conduits, cables, wires, and other utility lines.

The developer also undertook to organize a board of directors for the condominium. The by-laws of the condominium provided that the board of directors shall be composed of five persons and that "all directors shall be Unit Owners or persons having a Unit ownership interest 'in good standing', and any person designated as a representative of any interest held by a corporation, partnership, as tenants in common, joint tenants, or tenants by the entirety, 'in good standing' shall for this purpose be deemed to have a unit ownership interest." The developer appointed Blake B. Harrison and Riley S. Merson, vice presidents of Residential Developers, and Harry D. Barney, the comptroller of MCD Enterprises, as board members. Harrison served as

president of the board of directors, Merson served as vice president, and Barney served as treasurer and acting secretary.

Between August, 1975, and October, 1978, Residential Developers sold all of the condominium units and all interest in the common elements to the appellant or the class it represents. Meanwhile, the three developer-appointed directors served on the board of directors from March, 1976, to October, 1978, when the developer sold the last of its units. In 1977, the unit-owner directors began informing the developer-appointed directors of unit owners' complaints regarding construction and maintenance of the common elements. The developer-appointed directors assured them that the problems would be looked into and any defects would be remedied.

After the last of the units was sold, the developer, on October 13, 1978, relinquished the files of Canterbury Riding Condominium to the Council of Unit Owners. The developer-appointed directors resigned on October 24, 1978.

On October 13, 1981, the appellant, Council of Unit Owners of Canterbury Riding Condominium, which is responsible for the maintenance and repair of the common elements, filed suit against the appellee Chesapeake Investors, Inc., as successor by merger to the developer, and against the three developer-appointed former directors. In count one of its declaration, as amended on January 22, 1982, the Council alleged negligent construction of the condominium. In count two, the Council alleged that the three developer-appointed directors and, through them, Residential Developers and MCD Enterprises, breached their fiduciary duty to the Council of Unit Owners 1) by allowing the improper construction practices alleged in count one, 2) by reimbursing the developer for assessments, 3) by failing to take adequate steps to effect certain repairs, and 4) by concealing this conduct from August, 1975, to October, 1978.

The Council subsequently dismissed its suit against Blake Harrison. The remaining defendants—the appellees here-

in—filed a motion for summary judgment as to count two, contending that the Council had knowledge of the acts constituting the alleged breach of fiduciary duty more than three years before suit was filed and that suit, therefore, is barred by the statute of limitations. Following a hearing, the circuit court agreed and granted the motion for summary judgment as to count two. An order to that effect was subsequently signed. Thereafter, in consideration of the Council's motion for entry of a final judgment, the circuit court "found no just reason for delay" and ordered "that a Final Judgment be entered as to the Defendants' Motion for Summary Judgment as granted to Count II of the Amended Complaint. . . ." The next day, the Council filed its appeal to this Court as to count two. Count one is still pending before the circuit court.

On this appeal, the Council of Unit Onwers concedes that "the trial court was correct in finding that appellees were entitled to judgment as a matter of law on the sole issue of whether the statute of limitations had run for the assessment reimbursement claim." The Council contends, however, that the trial court erred in granting summary judgment as to count two on the issue of whether the statute of limitations barred the Council's claim that the appellees breached their fiduciary duty to the Council by allowing the condominium common elements both to be designed and to be constructed improperly and by concealing their knowledge of the construction defects.

We cannot reach the merits of the appellant's contention. Although neither side has questioned or discussed the jurisdiction of this Court to hear this appeal, we hold that this appeal is not properly before us and dismiss it.

The circuit court found that there was no just reason for the delay and directed that final judgment be entered as to count two pursuant to Md.Rule 2–602 (formerly Md.Rule 605 a). This rule was modeled after Fed.R.Civ.P. 54(b). The Maryland rule uses substantially the same language as the federal rule and the interpretations of the federal rule

have been held to be especially persuasive in determining the meaning of its Maryland counterpart. *Diener Enterprises v. Miller,* 266 Md. 551, 295 A.2d 470 (1972); *Biro v. Schombert,* 285 Md. 290, 402 A.2d 71 (1979); *Tidewater Ins. Assocs. v. Dryden Oil Co.,* 42 Md.App. 415, 401 A.2d 178 (1979).

Because of the increasingly liberal joinder of claims and joinder of parties permitted under the rules in recent years, this rule, in both its federal and state manifestations, became necessary to alleviate occasional hardship. Available to deal with the infrequent harsh case, it was intended to facilitate the entry of a judgment upon one or more claims or as to one or more parties, in a multiple-claim or multiple-party action, before the final adjudication of the entire case. It makes available, where appropriate, an immediate appeal. It seeks to avoid the possible injustice that might sometimes result from a delay in entering judgment until the final resolution of all claims. Rule 2–602 (as worded at the time of the trial court's action in this case) provided:

*"When more than one claim for relief is presented in an action,* including a consolidated action, whether by original claim, counterclaim, cross-claim, or third-party claim, *or when multiple parties are involved, or when partial judgment is sought pursuant to Rule 2–501(e), the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only if the court expressly determines that there is no just reason for delay and expressly directs the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and is subject to revision at any time

before the entry of judgment that adjudicates all the claims and the rights and liabilities of all the parties." (Emphasis added).[1]

Maryland Rule 2–602 is not a grant of unlimited discretion to the trial judge. By definition, it only applies 1) "[w]hen more than one claim for relief is presented in an

---

1. Rule 2–602 has been amended, the new version taking effect on April 8, 1985. The changes, though not affecting the substance of the rule, have dramatically improved its ability to communicate its basic message. The provisions of the rule have been divided into sections (a) and (b). The essential message, that ordinarily a decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action," had been buried at the tail-end of the former version. In the amended version, as section (a), it now announces its dominant theme at the very outset:

> "(a) Generally.—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counter-claim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
> (1) is not a final judgment;
> (2) does not terminate the action as to any of the claims or any of the parties; and
> (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties."

The exceptional circumstances wherein "the entry of a final judgment" may be directed now appear as section (b). The former version could easily have led its readers astray, as it first stated what *may* be done before reaching its more basic message as to what *cannot* be done. In the amended version, the main thrust is far more clear, as the rule announces first what *cannot* be done before cataloging the exceptional circumstances under which, sometimes, something *may* be done. Communication is also facilitated by the new phrasing of (b)(2). Instead of simply directing the reader blindly to Rule 2–501(e), as the earlier version had done, the amended version recites the pertinent language from Rule 2–501(e), just as it further makes explicit that the reference is only to Rule 2–501(e)*(3)* specifically rather than to Rule 2–501(e) generally. Section (b) now provides:

> "(b) When Allowed.—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
> (1) as to one or more but fewer than all of the claims or parties; or
> (2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only."

*See also* P. Neimeyer & L. Richards, *Maryland Rules Commentary* at 348 (1984); *Commentary on the New Maryland Rules of Civil Procedure*, 43 Md.L.Rev. 669, 820–822 (1984).

action" and the judgment disposes of at least one of those claims; 2) "when multiple parties are involved" [2] and the judgment disposes of at least one of those parties; or 3) when a summary judgment, pursuant to Rule 2-501(e)(3), disposes of "some but less than all of the amount requested in a claim seeking money relief only." [3] Unless at least one

---

**2.** Former Md.Rule 605 a, effective until July 1, 1984, did not contain the language "or when multiple parties are involved." The Court of Appeals, however, adopted the view that the term multiple claims in the rule included multiple parties. *See Picking v. State Finance Corp.,* 257 Md. 554, 558, 263 A.2d 572, 574 (1970); *Todrow v. Ford Motor Co.,* 260 Md. 142, 144, 271 A.2d 688, 689 (1970). Fed.R.Civ.P. 54(b), after which Md.Rule 605 a and Md.Rule 2-602 were patterned, was amended in 1961, making it expressly applicable to judgments for or against one or more but fewer than all the parties in an action. The amendment settled an issue which had been theretofore unclear and on which federal courts were divided. For an excellent history of Fed.Rule 54(b), *see generally* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2653.

**3.** This third possible exemption from the otherwise foreclosing effect of the nonappealability of a decision that disposes of less than the entire case was added when the new Maryland Rules of Civil Procedure became effective on July 1, 1984, replacing former Md.Rule 605 a with new Rule 2-602. It deals with a situation which, it is contemplated, will only rarely arise. In holding it inapplicable in that particular case, this Court discussed this particular exemption in *Russell v. American Security Bank,* 65 Md.App. 199, 499 A.2d 1320 (1985). We observed, at 65 Md.App. 204, 499 A.2d 1320:

"These rules have been recently amended to make clear that a Rule 2-501(e) summary judgment resolving only part of one claim can be certified as an appealable final judgment only where the claim is limited to seeking monetary relief. *See* Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, March 15, 16, 1985 at 24–28, 48–49."

P. Niemeyer & L. Richards, *Maryland Rules Commentary* at 349–350 (1984), explains the purpose of this additional exemption from nonappealability:

"The ability to obtain a judgment on some but less than all of the relief requested in a claim is new and is limited to an order that grants part of a motion for summary judgment under Rule 2-501(e)(3). See the commentary under Rule 2-501. Its use should be limited to circumstances where there is a genuine dispute of material fact over a small portion of the relief sought, and the bulk of the relief is undisputed. When these conditions are met and the court determines that the policy against piecemeal appeals is overcome by the need to enter a judgment for some of the relief requested, it may enter an appealable judgment for the undisputed

of the claims has been totally decided or unless all the rights and liabilities of at least one of the parties have been adjudicated or unless there has been a partial summary judgment for some but less than all of the amount requested in a claim seeking money relief only, Md.Rule 2–602 is not applicable. Until one of these conditions precedent has been satisfied, the trial judge has no authority to make "an express determination that there is no just reason for delay" and to direct that judgment be entered. The rule simply does not come into play.

The question of what constitutes "multiple parties" for purposes of the rule has not been a subject of significant dispute. By contrast, the question of what constitutes "multiple claims" for purposes of the rule has been the subject of extensive litigation. It is not always clear whether a case involves multiple claims (where the rule would apply) or only a single claim supported by multiple grounds (where the rule would not apply). The Court of Appeals opinion in *East v. Gilchrist*, 293 Md. 453, 459, 445 A.2d 343, 346 (1982), is instructive in this regard:

> "A claim for purposes of Rule 605 a must at least be a complete cause of action; if two purportedly separate 'claims' are actually the same cause of action, then only one claim is presented. *Biro v. Schombert, supra,* 285 Md. [290] at 295 [402 A.2d 71]; *Suitland Dev. v. Merchants Mort.,* 254 Md. 43, 54, 254 A.2d 359 (1969). Different legal theories for the same recovery, based on the same facts or transaction, do not create separate 'claims' for purposes of the rule. *Biro,* [285 Md.] at 295 [402 A.2d 71]; *Diener Enterprises v. Miller, supra,* 266 Md. [551] at 556–557 [295 A.2d 470]. Moreover, where different items of damages or different remedies are sought for the same cause of action, multiple claims are not present-

---

amount, and reserve the minor disputed amounts for trial. The ability to make such an order a judgment is an exception to the general rule that the ruling must adjudicate an entire claim for relief or all the rights and liabilities of at least one party in order to be certified as a judgment."

ed. *Biro,* [285 Md.] at 295–297 [402 A.2d 71]; *Harford Sands, Inc. v. Levitt & Sons, supra.* As the Supreme Court stated in *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 743, n. 4, 96 S.Ct. 1202, 1206, [n. 4] 47 L.Ed.2d 435 (1976), with regard to Federal Rule 54(b):

> 'It is sufficient to recognize that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.' "

Similarly, the Court said in *Diener Enterprises v. Miller, supra,* at 266 Md. 556, 295 A.2d 71:

> " 'A single claimant presents multiple claims for relief when his possible recoveries are more than one in number and not mutually exclusive.... But where a claimant presents a number of legal theories, but will be permitted to recover on at most one of them, his possible recoveries are mutually exclusive, and he has but a single claim for relief.' ... The existence of multiple claims ultimately depends upon whether the 'aggregate of the operative facts' presented states more than one claim which can be separately enforced." (Citations omitted).

■ With respect to one of the appellees, the developer (Chesapeake Investors, Inc.), the condition precedent for the applicability of the rule was not satisfied. There was, therefore, no occasion for the trial judge even to consider the entry of a final judgment as to this appellee. As to the developer (Chesapeake Investors, Inc.), the two counts of the appellant's amended declaration state different legal theories for the same recovery, based on the same facts. Essentially, it is the appellant's position that the developer negligently constructed the condominium. In count one, the appellant alleges such negligent construction and seeks damages to remedy the defects. In count two, the appellant alleges that the appellees—the developer and the developer-appointed directors—breached their fiduciary duty by allowing and concealing improper construction practices and by failing to take adequate steps to effect repairs. In count

two, the appellant again seeks damages to remedy the defects and additionally seeks punitive damages. As to the developer, however, count two is not really a separate claim, but only an alternative legal theory for the same recovery. As with count one, it is based on the charge that the developer did not construct the building properly and that the uncorrected defects caused damage to the plaintiffs. The summary judgment as to count two, therefore, did not dispose of a distinct "claim for relief" but only of one issue within a single claim. Thus, the condition precedent to the invocation of Md.Rule 2–602 as to Chesapeake Investors, Inc. was not satisfied and the circuit court had no authority to direct that final judgment be entered as to the developer. *Biro v. Schombert, supra, Lewis v. Lewis,* 290 Md. 175, 428 A.2d 454 (1981); *Robert v. Robert,* 56 Md.App. 317, 467 A.2d 798 (1983). We hold that the decision of the circuit court with respect to the appellee Chesapeake Investors, Inc. is in error, as a matter of law, and is hereby reversed.

With respect to the other appellees, the developer-appointed former directors, however, a very different legal situation is presented. As to them, the summary judgment on the second count did, indeed, finally adjudicate all of their liabilities. They were not named in and were not parties to the still-pending first count. Since multiple parties were involved, the circuit court had the authority under the rule to determine, in its discretion, that there was no just reason for delay and to direct the entry of final judgment as to the former directors.

■ The fact that the circuit court had such discretionary authority, however, does not preclude us, as an appellate court, from reviewing the trial court's decision. After pointing out that interpretations of the federal rule are especially persuasive as to the meaning of the Maryland rule, the Court of Appeals in *Diener Enterprises v. Miller, supra,* made this very clear:

"An examination of pertinent federal decisions demonstrates that even in those cases where the trial judge has discretionary authority under the rule, his exercise of discretion does not preclude review by an appellate court. *Sears Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); *RePass v. Vreeland,* 357 F.2d 801 (3d Cir.1966); *Columbia Broadcasting System, Inc. v. Amana Refrigeration,* 271 F.2d 257 (7th Cir.1959), *cert. denied,* 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960); *Gass v. National Container Corporation,* 271 F.2d 231 (7th Cir.1959); *Flynn & Emrich Company v. Greenwood,* 242 F.2d 737 (4th Cir.1957), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137. *This permits the appellate court to determine if there is anything in the record which establishes the existence of any hardship or unfairness which would justify discretionary departure from the usual rule establishing the time for appeal."* 266 Md. at 555, 295 A.2d 71. (Emphasis supplied).

Although the Court of Appeals questioned whether there existed any compelling reason to permit a piecemeal appeal in the *Diener* case, it did not have to decide whether there had been an abuse of discretion. The Court held that the trial court lacked authority, as a matter of law, to enter an appealable judgment in that case, since there was no more than one claim in the action.

Even though not dealing with an exercise of discretion in that case, the Court, by way of strong *dicta,* did offer a set of guidelines to trial judges as to how their discretionary authority should be exercised under the rule:

"As a guide to trial judges, we suggest that when they contemplate utilizing the provisions of Rule 605 a to enter an appealable judgment they exercise considered discretion. In doing so, they should balance the exigencies of the case before them with *the policy against piecemeal appeals* and then *only allow a separate appeal in the very infrequent harsh case. Panichella v. Pennsylvania Railroad Company,* 252 F.2d 452 (3d Cir.1958), *cert.*

*denied,* 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960)." 266 Md. at 555–556, 295 A.2d 71. (Emphasis supplied).

■ As we proceed to review this particular exercise of discretion, a preliminary word is in order on the subject of the exercise of discretion generally. Whenever that term of art is used, it connotes, by definition, some range within which discretion may be legitimately exercised one way or the other without constituting an abuse. The notion of a range of discretion, however, is not an immutable and invariable criterion in all of its myriad applications. The range of discretion frequently changes with the subject matter calling for the exercise of discretion. In handling the progress of a trial, for instance, as where the judge rules on a leading question, permits a continuance, or assesses the need for a mistrial, the range of discretion is very broad and the exercise of discretion will rarely be reversed. On the issue now before us, by way of contrast, the discretionary range is far more narrow. It is circumscribed by strong policy considerations and well-articulated guidelines.[4]

In dealing with the federal counterpart to the Maryland rule, the federal courts have frequently considered the question of whether a trial court has abused its discretion under Rule 54(b). In doing so, they have suggested certain factors that should be considered in determining that no just reason for delay exists. The courts have sometimes failed, however, to distinguish cleanly between the authority to direct a judgment under the rule—that is, whether or

---

4. There is even some question as to whether an appellate court's power to countermand the order of the trial judge in this regard even calls for a finding that the trial judge abused his discretion. Because of the necessity for the appellate court to maintain some control over its docket and calendar, this may well be a situation where the trial judge makes the initial and tentative determination, subject always to the appellate court's authority to decline to accept the case until all aspects of the case have been finally adjudicated. It is not necessary for us in this case, however, to deal with this philosophically troubling, albeit less-than-earth-shaking, nuance of appellate review, for our determination would be the same under either standard.

not the condition precedent to the invocation of the rule has been satisfied—and the propriety of the district court's discretionary decision to enter final judgment. At times, those appellate courts have decided that the direction for the entry of final judgment was erroneous because multiple claims were not involved, when actually multiple claims were involved but the district court's determination that there was no just reason for delay was thought to be an abuse of discretion. *See Aetna Cas. & Sur. Co. v. Giesow,* 412 F.2d 468 (2d Cir.1969); *Carter v. Croswell,* 323 F.2d 696 (5th Cir.1963); *Seaboard Mach. Corp. (of Delaware) v. Seaboard Mach. Corp. (of New Jersey),* 267 F.2d 178 (2d Cir.1959).

As we turn to our review of the exercise of discretion in this case, we note initially, as did the *dicta* from *Diener Enterprises v. Miller, supra,* the strong policy considerations against piecemeal appeals. The observation from Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2655, at 44, is illuminating:

"Despite warnings that Rule 54(b) certificates should be granted sparingly, the district courts, with their somewhat limited ability to assess the burden on the caseload of the courts of appeal and who understandably are anxious to clear decided issues from their own dockets, sometimes seem to bow to requests from litigants to release claims for review without due deference to the policies underlying Rule 54(b)."

This strong policy consideration has always been an invigorating principle of Maryland law. The purpose of the rule is to prevent piecemeal appeals as far as possible and to avoid thereby the confusion, delay, and expense which would be caused by having two or more appeals in the same suit. *Durling v. Kennedy,* 210 Md. 549, 123 A.2d 878 (1956); *Parish v. Maryland & Va. Milk Producers Ass'n,* 250 Md. 24, 242 A.2d 512 (1968), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); *Harkins v. August,* 251 Md. 108, 246 A.2d 268 (1968); *Picking v. State Finance Corp.,* 257 Md. 554, 263 A.2d 572 (1970); *Knight v. Tolson,*

10 Md.App. 311, 270 A.2d 132 (1970); *Flores v. King*, 13 Md.App. 270, 282 A.2d 521 (1971); *Burns v. Goynes*, 15 Md.App. 293, 290 A.2d 165 (1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973). The primary purpose is to prevent the adverse effects resulting from piecemeal appeals, while yet allowing for a separate appeal in the very infrequent harsh case. *Harford Sands, Inc. v. Levitt & Sons*, 27 Md.App. 702, 343 A.2d 544 (1975); *Schlossberg v. Schlossberg*, 22 Md.App. 527, 323 A.2d 708 (1974); *aff'd*, 275 Md. 600, 343 A.2d 234 (1975).

As we approach our function of reviewing the trial court's determination that there was no just reason for delay in this case as to the developer-appointed former directors, we note that neither Md.Rule 2–602 nor Fed.R. Civ.P. 54(b) requires that the trial court include a statement explaining the reasons for its action or the factors which it considered. Numerous federal appellate courts, however, have recognized the usefulness of such an explanation, especially where the reasons for the certification under Rule 54(b) are unclear, and have encouraged the trial courts to state their reasons so that there may be meaningful appellate review. *See Rothenberg v. Security Management Co.*, 617 F.2d 1149, 1150 (5th Cir.1980) (per curiam), *cert. denied*, 449 U.S. 954, 101 S.Ct. 359, 66 L.Ed.2d 218; *Gumer v. Shearson, Hamill & Co.*, 516 F.2d 283 (2d Cir.1974); *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 275 (2d Cir.1968).

In *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir.1975), the strong desirability of such an explanation was forcefully discussed:

"A proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of 'no just reason for delay.' The court should clearly articulate the reasons and factors underlying its decision to grant 54(b) certification. '... It is essential ... that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant

factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law...' "

■ Although we stop short of adding any rigid requirement or "precise rubric" when a trial judge certifies a case as final under Rule 2–602, we nonetheless find it more difficult to affirm the exercise of discretion where no reasons for that exercise are given. Here, the judge did not give us the benefit of his reasoning process. Here, moreover, we do not even have the benefit of an articulated argument, oral or written, from the appellant as it moved for certification. The interests of judicial economy and the policy against piecemeal appeals are readily apparent considerations militating against certification. We are left to speculate as to what the countervailing considerations might be. We agree with the observation of Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2659, at 114:

"Whatever the factors considered, the court should provide a list of them with its decision so that there can be a meaningful review of the action taken."

■ In turning to the factors that bear upon this exercise of discretion, the federal case law has articulated a number of considerations that should govern any contemplated departure from "the normal rule that no appeal be heard until the entire case has been completed." *Id.*, § 2659, at 100. The case law speaks of balancing the equities. Ranged against the interests of judicial economy and the strong policy against piecemeal review may be some harsh impact upon the litigant that delay might work. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2659, at 99–100, is again instructive:

"Because of the strong federal policy against piecemeal review several courts have stated that the district court should make the express determination only in the infrequent case in which a failure to do so might have a harsh effect. As Judge Hastie said in *Panichella v. Pennsyl-*

*vania Railroad Company,* the determination involves 'weighing the overall policy against piecemeal appeals *against whatever exigencies the case at hand may present....* It follows that 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel.' It is clear from this statement that some showing must be made by the party desiring an immediate appeal in order to overcome the normal rule that no appeal be heard until the entire case has been completed." (Emphasis supplied).

Prominent among the harsh and adverse effects that delay might sometime work is a harsh economic effect. In *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Supreme Court, as it approved the exercise of discretion by the trial judge, gave a vivid example of what might qualify as a harsh economic effect. In that case, as Chief Justice Burger pointed out for the Court, the district court had determined that it might be many months, if not years, before the pending counterclaims might be decided; that the plaintiff's claim was liquidated and large ($19,000,000); and that the difference between the prejudgment and market interest rates would cause the plaintiff to suffer a severe daily financial loss unless certification was granted.

In the case before us, the record reflects no showing by the appellant that a delay would work unduly harsh economic effects upon it nor any finding by the trial judge in that regard.

Another strong factor to be considered is the danger that the same issues will have to be considered by the appellate court on successive appeals. In the case before us, the first count charging negligent construction is still before the trial court. Whichever way that trial goes, the losing party will, in all likelihood, appeal. Many of the facts and issues which would be before us if we entertained the present appeal on its merits would be back before us again in that likely subsequent appeal. In this regard, the policy consid-

erations are again well-summarized by Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 2654, at 37–38:

"[A]n appeal following a Rule 54(b) order is the exception rather than the rule and the limitations on its availability mean that there is relatively little chance that the appellate court will be forced to consider the same issues on successive appeals. Indeed, if the claims in an action are closely related and there is a risk of repetitive appeals, the district court may decide that this is a reason for delaying review and refuse to make the determination required by Rule 54(b)."

The same authors, in § 2659, at 103–104, point out the adverse impact that such piecemeal appeals can have on judicial economy:

"It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be forced to consider again when another appeal is brought after the district court renders its decision on the remaining claims or as to the remaining parties."

A factor to be considered is that the determination of the remaining count before the trial court might utterly moot the need for the reivew now being sought. If the trial of the first count charging negligence results in a verdict that the developer was not negligent, all of the peripheral claims under the second count, based upon that alleged negligence, evaporate. As Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* points out, § 2659, at 106:

"Another factor the courts have weighed in deciding whether to make the determination required by Rule 54(b) is the possibility that the need for review might be mooted by future developments in the district court.... In these situations, if defendant is not found liable in the main action there never will be any need to litigate the impleader claim."

A closely-related but distinct factor is the question of whether entertaining the present appeal upon the merits

would require us to determine questions that are still before the trial court. Because the granting of the summary judgment in the present case was based upon limitations, this particular factor does not work against the exercise of discretion here.[5]

As a general guideline to bench and bar, the words of *Cohen v. Owens & Company, Inc.*, 464 A.2d 904, 906–907 (D.C.App.1983), are highly appropriate:

"This is at least the fourth appeal in the last six months which we have had to dismiss on jurisdictional grounds for non-compliance with Rule 54(b). This fact suggests to us that the bar in general is not as familiar with that rule as it should be. Before rushing to file a notice of appeal from a trial court order that does not completely terminate a case, counsel should stop to consider whether the order is appealable. Patently dismissible appeals place an unnecessary and unwarranted burden on an already overburdened court."

■■■ We hold that the trial judge with respect to the appellee developer had no authority to make the decision final and appealable under Md.Rule 2–602. We further hold that with respect to the developer-appointed directors, the trial judge should not, in the appropriate exercise of his discretion, have made the decision final and appealable under Md.Rule 2–602. Despite the fact that neither side has questioned the jurisdiction of this Court to entertain this appeal, we must, on our own motion, recognize our lack of jurisdiction. Since, furthermore, jurisdiction cannot be conferred upon the Court by consent of the parties, we must dismiss the appeal. *See Potter v. Bethesda Fire*

---

5. Where pertinent, however, this is a weighty factor against certification. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d,* speaks to this factor in § 2659, at 105:

"An appellate court also should not hear appeals that will require it to determine questions that are before the trial court with regard to other claims. Sometimes meaningful immediate review may not be possible because questions the appellate court might want to consider have not been adjudicated at the trial level."

*Dept., Inc.,* 302 Md. 281, 487 A.2d 288, (1985); *Diener Enterprises v. Miller, supra.*

APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.