524 A.2d 798

**ALLSTATE INSURANCE COMPANY**

v.

**Louis ANGELETTI, Jr., et al.**

No. 926, Sept.Term, 1986.

Court of Special Appeals of Maryland.

May 6, 1987.

**212**

Edward P. Murphy (Allewalt & Murphy, P.A., on the brief), Baltimore, for appellant.

Augustus F. Brown, Bel Air, for appellee, Louis Angeletti, Jr.

Dexter M. Thompson, Jr. (Robert K. Boyd, on the brief), Elkton, for appellee, Debora J. Ewing.

Argued before MOYLAN, WEANT and WENNER, JJ.

WENNER, Judge.

Allstate Insurance Company (Allstate) has appealed from an order entered by the Circuit Court for Cecil County in a declaratory judgment action brought by Allstate to determine coverage under a homeowner's insurance policy. Because we conclude that the certification under Rule 2–602 of the order appealed from as a "final judgment" was improper, we shall not reach the merits of the controversy.

The case began when a long standing feud between two neighboring families, the Ewings and the Angelettis, erupted into violence. One particularly bitter and heated backyard shouting match deteriorated into a shooting match when Louis Angeletti, Jr. shot and injured Daniel Ewing and his wife, Debora.[1] As a result, the Ewings filed a suit

---

1. In fairness to Mr. Angeletti, a more accurate rendition of his version of the facts is that during the course of an argument, the Ewings

for damages against Mr. Angeletti ("the underlying suit"). Mr. Angeletti claimed coverage under his Allstate homeowner's insurance policy. Allstate, however, denied coverage and initiated the lawsuit which is the subject of this appeal.

The record begins with Allstate's "Complaint for Declaratory Judgment," which named Louis Angeletti, Jr., Daniel Ewing and Debora Ewing as defendants. In this complaint Allstate alleged that on the date of the incident it had in force a homeowner's insurance policy insuring Louis Angeletti, Jr., under "general liability conditions"; that on the day in question "Louis Angeletti, Jr. is alleged to have shot and wounded Daniel J. Ewing and Debora Jean Ewing who have filed suit in the Circuit Court for Cecil County, Law 13697, seeking damages for injuries arising out of said shooting"; that "Louis Angeletti, Jr. and Daniel L. Ewing and Debora Jean Ewing have sought to have [Allstate] defend the case and Louis Angeletti, Jr. has sought [Allstate] to cover any liability which might be found against him pursuant to said policy"; and that "Allstate Insurance Company believes that its rights, duties and obligations under said policy do not require it either to defend or cover Louis Angeletti, Jr. in the Cecil County case herein referenced."

■ The complaint closed with a prayer for a judgment declaring the rights and duties of Allstate under the policy, as they related to the underlying suit, but no copy of the Ewings' complaint accompanied this pleading. Indeed, no copy of the Ewings' complaint has ever been entered into this record by any of the parties,[2] nor is there any reference

---

somehow or other "became shot" with a gun he happened to be holding.

2. Mr. Angeletti has included a copy of the Ewings' complaint as an appendix to his appellate brief. Our review is limited, however, to the contents of the record certified to us by the circuit court, and thus the complaint is not before us. Rule 1085; *see Lang v. Catterton*, 267 Md.

in this record as to what specific allegations are contained in the underlying suit.

Nevertheless, while the Ewings' theory or theories of liability remained a mystery, it soon became clear that Allstate's denial of coverage was based on an exclusion in the policy which states: "We [Allstate] do not cover bodily injury intentionally caused by an insured person." Allstate took the position that Mr. Angeletti intentionally injured the Ewings.

The issue of whether Mr. Angeletti intentionally shot the Ewings was tried before a jury. The jury was unable to reach a verdict as to whether Mr. Angeletti intentionally shot Daniel Ewing but returned a verdict that he had not intentionally shot Debora Ewing.

The trial judge denied Allstate's motion for judgment notwithstanding the verdict and ordered that:

> The Plaintiff, Allstate Insurance Company, shall be required to defend Louis Angeletti, Jr., in the case filed by Debora Jean Ewing, in the Circuit Court for Cecil County, Law No. 13697; and

> The Plaintiff, Allstate Insurance Company, shall be required to pay on behalf of the Defendant, Louis Angeletti, Jr., within the applicable limits of its policy, any judgment entered against him and in favor of Debora Jean Ewing in Case No. 13697; and

> That the case of Allstate Insurance Company vs. Louis Angeletti, Jr. and Daniel L. Ewing is and has been declared a mistrial; and

> That final judgment as directed above shall be entered with respect to the claim of Allstate Insurance Company, Plaintiff vs. Defendants Louis Angeletti, Jr. and Debora Jean Ewing, there being no just reason for delay: as provided by Md.Rule 2–602. . . .

268, 274, 297 A.2d 735 (1972); *Community Realty Co. v. Siskos,* 31 Md.App. 99, 102–04, 354 A.2d 181 (1975).

■ Allstate appealed from the judgment entered pursuant to that order. As we have noted, we shall dismiss the appeal *nostra sponte.* While none of the parties have challenged our jurisdiction to hear this case, we must recognize upon our own motion our lack of appellate jurisdiction because of an improper application of Rule 2–602. *Potter v. Bethesda Fire Department Inc.,* 302 Md. 281, 285, 487 A.2d 288 (1985); *Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71 (1979); *Diener Enterprises, Inc. v. Miller,* 266 Md. 551, 555, 295 A.2d 470 (1972); *Russell v. American Security Bank,* 65 Md.App. 199, 206, 499 A.2d 1320 (1985).

Rule 2–602 provides as follows:

(a) Generally.—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) When Allowed.—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

Since Rule 2–602 is modeled after Rule 54(b) of the Federal Rules of Civil Procedure, interpretations of its federal counterpart have been deemed especially persuasive as to the meaning of the Maryland rule. *Diener Enterprises, Inc. v.*

■■■■■■■■■■■■■■■■■

*Miller, supra; Canterbury Riding Condominium v. Chesapeake Investors, Inc.,* 66 Md.App. 635, 505 A.2d 858 (1986).

■■ In most of the cases involving an improper application of this "certification" procedure, dismissal of the appeal has resulted because of an erroneous legal determination as to what constitutes "a claim." *See, e.g., East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982); *Biro v. Schombert, supra, Diener Enterprises, Inc. v. Miller, supra; Harford Sands, Inc. v. Levitt & Sons,* 27 Md.App. 702, 343 A.2d 544, *cert. denied,* 276 Md. 744 (1975). Thus, where an order adjudicates less than an entire claim in a case involving multiple claims, Rule 2–602 does not apply and the trial judge has no authority to direct the entry of final judgment on the order.[3] In the case *sub judice,* however, the order of

---

3. Prior to the April 8, 1985 amendment of Rule 2–602, the rule read: When more than one claim for relief is presented in an action, including a consolidated action, whether by original claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, or when partial judgment is sought pursuant to Rule 2–501(e), the court may direct the entry of judgment as to one or more but fewer than all the claims or parties only if the court expressly determines that there is no just reason for delay and expressly directs the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, *that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties* shall not terminate the action as to any of the claims or parties and is subject to revision at any time before the entry of judgment that adjudicates all the claims and the rights and liabilities of all of the parties. (Emphasis added).

   Thus, at first glance, it might appear that with the addition of the language "or that adjudicates less than an entire claim" to section (a) of Rule 2–602, the April 8, 1985 amendment allows final judgments to be entered in all sorts of partially adjudicated claims, upon the determination that there is no just reason for delay. However that may be, a careful examination of section (b) of the rule as now amended makes it clear that the *only* exception to the requirement that an order adjudicate an entire claim before it may be certified is where summary judgment is entered pursuant to Rule 2–501(e)(3) for some but less than all of the amount requested in a claim seeking money relief only. *See* Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, March 15/16, 1985, at 21–28. *See also Russell v. American Security Bank,* 65 Md.App. 199, 499 A.2d 1320 (1985); P. Niemeyer & L. Richards, *Maryland Rules Commentary,* 349–50.

the circuit court falls within the ambit of the rule, because it adjudicates the rights and liabilities of some but fewer than all of the parties to the action. Nevertheless, even where the trial judge has the authority to direct the entry of final judgment on such an order, appellate courts have made it clear that the trial judge must exercise considered discretion before doing so and that certification is not to be done routinely or often.

In *Diener Enterprises, Inc. v. Miller, supra,* the Court of Appeals dismissed an appeal because of an erroneous application of former Rule 605a, the predecessor to Rule 2–602. Although the Court held that the trial judge lacked authority to enter final judgment on an order disposing of less than an entire claim, the Court also suggested in strong dicta the type of considerations to be weighed in a situation where a trial judge possesses discretionary authority under the rule. The Court stressed that appellate review of a discretionary certification would focus on whether there is anything in the record which establishes the existence of any hardship or unfairness which would justify discretionary departure from the usual rule establishing the time for appeal. 266 Md. at 555, 295 A.2d 470. As a guide to trial judges, the Court suggested that "they should balance the exigencies of the case before them with the policy against piecemeal appeals and then only allow a separate appeal in the very infrequent and harsh case." *Id.,* at 556, 295 A.2d 470.

The Court in *Diener* relied heavily on federal decisions interpreting Rule 54(b) of the Federal Rules of Civil Procedure, and was particularly influenced by *Panichella v. Pennsylvania Railroad Company,* 252 F.2d 452 (3d Cir. 1958), *cert. denied,* 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960). There the language of the Third Circuit is instructive. After discussing the historic policy against piecemeal appeals and the origin of Rule 54(b), the Court noted that:

> [T]he draftsmen of this Rule have made explicit their thought that it would serve only to authorize "the exercise of a discretionary power to afford a remedy in the

infrequent harsh case * * *." 28 U.S.C.A., Federal Rules of Civil Procedure, 118–119 note [and see 5 F.R.D. 472–73]. It follows that 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only "in the infrequent harsh case" as an instrument for the approved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule.

*Id.* at 455.

The Supreme Court has recently evidenced a disinclination to restrict the operation of Federal Rule 54(b) within an overly narrow framework. In *Curtiss-Wright Corporation v. General Electric Company*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Court cautioned against reading the Notes of the Advisory Committee which drafted Rule 54(b) as a standard of construction. In *Curtiss-Wright* the Court reversed a dismissal by the U.S. Court of Appeals for the Third Circuit, thereby approving a discretionary certification under Rule 54(b). The Supreme Court concluded that the Court of Appeals had misinterpreted the standard of review for Rule 54(b) certifications, and stated that: "However accurate it may be as a description of cases qualifying for Rule 54(b) treatment, the phrase 'infrequent harsh case' in isolation is neither workable nor entirely reliable as a benchmark for appellate review." *Id.* at 10, 100 S.Ct. at 1466, 64 L.Ed.2d at 12.

▮ Whatever the inclination of the Supreme Court may be, acting in its supervisory role regulating practice and procedure in the federal courts, we have found no similar inclination by our Court of Appeals to retreat from the suggestion that the certification procedure ought to be reserved for "the very infrequent harsh case[s]." *Starfish Condominium Association v. Yorkridge Service Corporation, Inc.*, 292 Md. 557, 569, 440 A.2d 373, 380 (1982) (quoting *Diener, supra* at 556, 295 A.2d at 473). Nor are we persuaded that a retreat from that language is wise. Thus we caution Maryland judges that, in the exercise of

their discretion under Rule 2–602, they should keep the concept of the "infrequent harsh case" firmly in mind.

■ As the caselaw discloses, that concept does not exist in a vacuum. While there is no set of specific standards applicable to every situation, certain general considerations have been strongly suggested by both courts and commentators [4] as useful in weighing the decision whether to certify an order as a final judgment. Judge Moylan, writing for this court in *Canterbury Riding Condominium v. Chesapeake Investors, Inc.,* 66 Md.App. 635, 505 A.2d 868 (1986), recently summarized the developing guidelines in this area. In his discussion of the proper exercise of discretion under this Rule, he noted that the primary considerations are the strong policy against piece-meal appeals and the interests of judicial economy. Both of these factors weigh heavily against certification, and in assessing them, it is important to consider whether the same issues will have to be considered by the appellate court on successive appeals. Whether the determination of the remaining claims may render moot the need for the review being sought should also be considered, as should the question of whether entertaining the appeal upon the merits would require us to determine questions that are still before the trial court. The trial judge should then weigh the exigencies of the case against those factors and consider the possible harsh effects of delaying an appeal until the entire case has been completed. The most obvious among these is a harsh economic effect, but there may be others depending on the circumstances of each case.

■ Against this background we turn to the certification in the case at hand. The main source of the parties' consternation is the jury's verdict that Mr. Angeletti did not intentionally injure Mrs. Ewing; but in order to gain perspective on that verdict, the parties have asked us to rule on

---

**4.** *See, e.g.,* Wright, Miller & Kane, *Federal Practice and Procedure, Civil 2d* § 2659.

issues that have not yet been considered by the trial judge. The necessity of having these questions answered makes it very clear that the verdict is just one small piece of this case.

For example, the parties have asked us to determine that this is an appropriate case for declaratory judgment. Although the issue was not raised below, it is important that the trial judge consider the propriety of granting declaratory relief in such a case. As the Court of Appeals recently noted in *Haynie v. Gold Bond Building Products*, 306 Md. 644, 511 A.2d 40 (1986), even where the propriety of granting declaratory relief has not been challenged below the question may be raised *sua sponte* at the appellate level. The Court's warning is clear, that:

> [O]verlooking the inappropriate procedure might result in litigants misusing the declaratory judgment statute in order to circumvent the policy against appeals from interlocutory orders and against piecemeal appeals. For example, a defendant in a tort case might have several legal defenses in addition to the contention that he committed no wrongful act. The parties might desire to have a trial of only one such legal defense, instead of incurring the expense and time of trying the entire case, on the ground that a ruling favorable to the defendant would be dispositive of the case. Rule 2–502, permitting the trial of a single question, was designed for such situation. A "problem" with the Rule 2–502 procedure, from the limited viewpoint of the parties in a particular case, might be that a ruling in the 2–502 proceeding unfavorable to the defendant could not, under the language of the rule, be appealed until "after entry of an appealable order or judgment." Consequently, unless the 2–502 decision disposes of an entire "claim" and is certified as a final judgment in accordance with Rule 2–602, it could not be immediately appealed. *See, Harford Sands, Inc. v. Levitt & Sons*, 27 Md.App. 702, 707, 343 A.2d 544, *cert. denied*, 276 Md. 744 (1975). In order to evade the final judgment requirement, the parties, instead of invoking

the authorized procedure set forth in Rule 2–502, might make the question of law the subject of a separate declaratory judgment action. *Cf., East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982).

Conceivably, in the hypothetical case we are discussing, each separate disputed issue in the tort case could be made the subject of a separate declaratory judgment action. If this Court were to overlook the improper use of the declaratory judgment statute as long as no party to the litigation challenged the procedure, we would be allowing the parties, by consent, to bypass the final judgment requirement.

*Id.* at 653–54, 511 A.2d 40.

The Court in *Haynie* relied heavily on its opinion in *Brohawn v. Transamerica Insurance Company,* 276 Md. 396, 347 A.2d 842 (1975). In *Brohawn* the appellant had gone to pick up her grandmother at a nursing home and somehow became engaged in a brawl with some of the nursing home employees. When the injured employees sued on theories of negligence and assault, Mrs. Brohawn sought coverage from Transamerica, her insurance company. Transamerica sought a declaratory judgment that it was not obligated to defend Mrs. Brohawn or to pay any damages that might be found against her. After a hearing the circuit court denied declaratory relief to Transamerica and held that the question of coverage would be "determined by the jury's verdict [in the tort suits] on issues submitted as to the manner in which the injuries, if any, were sustained...." *Id.* at 401–02, 347 A.2d 842. Transamerica was ordered to defend Mrs. Brohawn.

Transamerica appealed, and we reversed the order of the circuit court and remanded the case for a declaratory judgment on the question of whether any injuries sustained were the result of intentional or negligent conduct. *Transamerica Insurance Co. v. Brohawn,* 23 Md.App. 186, 326 A.2d 758 (1974). Our decision was reversed by the Court of Appeals, which held that where the question to be resolved in the declaratory judgment action will be decided in pend-

ing actions, it is inappropriate to grant a declaratory judgment. *Brohawn,* 276 Md. at 406, 347 A.2d 842. As to Transamerica's obligation to defend Mrs. Brohawn, the Court stated that:

> The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend.... Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy.

*Id.* at 407–08, 347 A.2d 842. (Emphasis in the original; citations omitted).

In the case at hand, Mr. Angeletti has asked us to rule on appeal, for the first time, that Allstate is obligated to defend him because there is a "potentiality" of coverage. The problem with that is the allegations in the tort action have not been examined by the trial judge. That is another very important piece of this case that has simply been left hanging. Clearly, it is crucial that the trial judge examine the complaint in the underlying suit to determine what exactly the issues are. Any attempt by us to rule on one piece of this case could have a profound impact on these questions that are still before the trial court. Indeed, a resolution of those questions by the trial court could very well render this case moot.

Even if we were to review the verdict as to the shooting of Mrs. Ewing, it is obvious that a later appeal concerning the shooting of Mr. Ewing will involve close scrutiny of the same issues and much of the same evidence. In light of all of these factors, an appeal at this time clearly weighs against the interests of judicial economy and the policy against piecemeal appeals.

We are also troubled by the other side of the balance— the reasons why this order was certified as final. Initially

we note that none of the parties requested certification—it was ordered by the trial judge *sua sponte.* He began by denying Allstate's motion for judgment notwithstanding the verdict, stating that:

> ... evaluating it as a factual matter, I would not have come to the conclusion the jury did with respect to the question that it did answer, and would have come to an affirmative conclusion as to the one they didn't.
>
> The point is that I am not now allowed to substitute my judgment on the facts for that reached by the jury. As [Counsel for Mr. Angeletti] has indicated, they have spoken, and I don't think that at this level it would be appropriate for me to set aside their verdict.

Then, in the apparent belief that it would be more appropriate for us to set aside the jury's verdict, he continued:

> Let me also suggest to you this, that I think it would advance the cause of justice and this case to have it appealed for several reasons: Number one, the questions of whether or not this act or actions on the part of Mr. Angeletti in possessing the weapon and pulling the trigger is intentional was involved in a criminal case, it was involved in the insurance policy interpretation of the case, and it will be involved in the underlying tort, which is still pending.
>
> The real question is whether or not intentional means the same thing in all three cases, and whether or not one jury or another or part of it is estopped by the determination ... reached in the preceding case. I personally would like some guidance on that. I think it would save a lot of time maybe for Allstate to find out what the determination is for and to cause the Court to rule on that question....

While we are not unsympathetic to the trial judge's desire for guidance on these questions,[5] we conclude that this

---

5. We are also aware of his desire to save the parties from the fate of those in *Houghton v. County Commissioners of Kent County,* 305 Md.

certification is not one for which Rule 2–602 was designed. There has simply been no showing at all of exigent circumstances or a harsh effect in delaying the appeal until a final judgment has been entered on all claims in this case.[6]

■ While the trial judge mentioned "saving time" as a factor in his decision to certify the order as final, it appears that he really wanted to obtain an answer on questions of law raised in the case. As difficult and as convoluted as those questions may be, he is obligated initially to rule on them. Rule 2–602 may not be used to certify questions of law from the circuit courts to the appellate courts. In view of the policy against piecemeal appeals and the lack of any exigent circumstances justifying a departure from that policy, we hold that the trial judge abused his discretion in certifying this order as final.

APPEAL DISMISSED.

COSTS TO BE SHARED EQUALLY BY THE PARTIES.

407, 504 A.2d 1145, *motion for reconsideration denied,* 307 Md. 216, 513 A.2d 291 (1986).

6. Even if, after an examination of what exactly the issues are in the underlying suit, this declaratory judgment action is found to be inappropriate, Allstate would still be able to assert its position as to coverage under the policy. *See Allstate Insurance Company v. Atwood,* 71 Md.App. 107, 523 A.2d 1066 (1987).