710 A.2d 378

**Lorraine S. THARP**

v.

**DISABLED AMERICAN VETERANS DEPARTMENT OF MARYLAND, INC., et al.**

**No. 1662, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

May 29, 1998.

Suzanne Levin, Rockville, for appellant.

No brief or appearance by appellees' counsel.

Argued before MOYLAN and KENNEY, JJ., and JOHN J. BISHOP, Jr., Judge (retired), Specially Assigned.

MOYLAN, Judge.

This is the third time that an attempt has been made to bring before us, by way of a piecemeal appeal, the partial resolution—to wit, as to three of five remaining co-defendants—of a larger judicial unit. In all likelihood, the case will be before us again when the remaining part of the law suit, still pending at the trial level, is resolved one way or the other. What is now Md. Rule 2–602, modeled after and serving the same purpose as Federal Rule of Civil Procedure 54(b), was designed to curb just such a proliferation of fragmented appeals. On our own motion, we invoke that curb and dismiss this appeal.

The ruling appealed from is presumptively not a final judgment within the contemplation of Rule 2–602(a) because it "adjudicate[d] the rights and liabilities of fewer than all the parties to the action." The appellant, Lorraine S. Tharp, had filed a complaint in the Circuit Court for Baltimore City against eight defendants, alleging 1) the wrongful termination of her employment, 2) interference with her employment relationship, and 3) the intentional infliction of emotional harm.

The claims against three of those defendants—1) the National Office of the Disabled American Veterans, 2) Arthur Wilson, as an employee of that National Office, and 3) Paul Steicklein in his individual capacity—have been finally settled and do not, therefore, inhibit this appeal. The ruling here appealed from was the granting of a motion to dismiss filed by three other defendants: 1) Wallace Diehl, 2) Ernest Unger, and 3) Carl Brumage. Still pending, however, is the case against the remaining two defendants: 1) the Disabled American Veterans–Department of Maryland, Inc. and 2) Thomas Johns, both individually and in his capacity as an employee of the Disabled American Veterans of Maryland. The dismissal of the complaint as to Diehl, Unger, and Brumage—the order now being appealed—therefore, "adjudicate[d] the . . . liabilities of fewer than all of the parties to the action." The question is whether we will entertain such a partial appeal. We will not.

### The Problem of Piecemeal Appeals
### And the Judicial Response

Both the problem of proliferating appeals and the judicial response to the problem were incisively described by Judge Adkins in *Planning Board of Howard County v. Mortimer,* 310 Md. 639, 530 A.2d 1237 (1987). He explained how the "final judgment,". which was always the necessary predicate for an appellate court's subject matter jurisdiction, was traditionally described as something that ultimately decided or settled the entire controversy between the parties. Simplistic definitions from an earlier era later proved inadequate, howev-

er, as law suits became more sophisticated and more compli-
cated:

That definition works well enough in a simple lawsuit in
which a single plaintiff sues a single defendant on a single
claim. But what happens where there are multiple parties
and multiple claims, circumstances encouraged by the mod-
ern system of pleadings that promote liberal joinder of
parties, claims, cross-claims and counterclaims? *Some of
the claims or some of the parties or some of both may be
disposed of at various stages of the litigation. If every
disposition of this sort is appealable, the problems of dis-
ruption and delay at the trial level, overburden and dupli-
cation at the appellate level, and increased costs both to the
parties and to the judicial system become substantial.*

310 Md. at 645, 530 A.2d 1237 (emphasis supplied).

The initial federal response to the problem of proliferating
appeals was the promulgation in 1937, with amendments in
1946 and 1961, of Federal Rule of Civil Procedure 54(b).
Maryland in 1947 followed suit, almost verbatim, with what
was originally Rule 6a, III, Part Two of the General Rules of
Practice and Procedure and became, without significant
change, Former Rule 605a. On July 1, 1984, Rule 605a
became, again without significant change, Rule 2–602. An
April 8, 1985 amendment retitled Rule 2–602 and restructured
the text in order to emphasize the philosophical approach that
had theretofore been at best implicit.

Rule 2–602 is now entitled "Judgements not disposing of
entire action." The primary thrust of the Rule, and the newly
supplied emphasis, is Subsection (a). It provides that any
order disposing of fewer than all claims or fewer than all
parties is *ipso facto* not final and, therefore, not appealable:

(a) *Generally.* Except as provided in section (b) of this
Rule, an order or other form of decision, however designat-
ed, that adjudicates fewer than all of the claims in an action
(whether raised by original claim, counterclaim, cross-claim,
or third-party claim), or that adjudicates less than an entire

claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

In *Planning Board v. Mortimer,* 310 Md. at 647, 530 A.2d 1237, Judge Adkins explained the theory behind the Rule:

The design of Md.Rule 2–602 and its federal counterpart accomplishes these goals by viewing *an action involving multiple claims or multiple parties as a single judicial unit* ordinarily requiring complete disposition before a final appealable judgment may be entered. This single judicial unit theory historically governed actions involving multiple claims, and, to a lesser extent, multiple parties prior to the evolution of liberal pleadings. Moore [6 J. Moore, W. Taggart, J. Wicker, *Federal Practice* § 54.04[2.–3](2d ed.1987) at p. 54–44] explains:

The general proposition underlying *the single judicial unit theory was that an action constituted a single unit* for disposition despite the fact that it embraced multiple claims or involved multiple parties; *and a judgment lacked finality unless it completely disposed of this unit.*

Recently in *State Highway Admin. v. Kee* [309 Md. 523, 525 A.2d 637 (1987)], we explained that "[a]bsent a proper certification, Rule 2–602 is designed to bring all issues in an action up for appellate review in one appeal."

(Emphasis supplied; citations omitted).

In *Waters v. Whiting,* 113 Md.App. 464, 472–73, 688 A.2d 459 (1997), Judge Eyler made reference to the same "judicial unit" rationale:

The effect of these rules [Maryland Rule 2–602 and Federal Rule of Civil Procedure 54(b) ] is to view 'an action involving multiple claims or multiple parties as *a single judicial unit*

*ordinarily requiring complete disposition before a final appealable judgment may be entered.'* Accordingly, *a judgment lacks finality unless it completely disposes of the judicial unit.* Rule 2–602[ (b) ] does empower the trial court to permit exceptions to the rule[.] *Absent an exercise of this power, however, there are no exceptions to the judicial unit rule.*

(Emphasis supplied; internal citations omitted).

### *The Limited Exception*

It is subsection 2–602(b) that provides a limited and tightly circumscribed exception:

(b) *When allowed.* If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties;  . . .

It was the 1985 amendment that divided Rule 2–602 into two subsections. As Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary,* (2d ed.1992), p. 451, have noted, the "structure of the rule was changed to emphasize its intent." Subsection (a) states the norm—anything less than a complete resolution of the entire lawsuit is ordinarily not a final judgment ripe for appeal. Subsection (b) then provides a limited exception, available on rare occasions to avoid harsh results. Niemeyer and Schuett explain:

This amended rule reverses the emphasis of the former rule and of the federal rule by stating first, in section (a), the policy that a judgment is not entered until all claims are adjudicated as to all parties to the action. Section (b) provides a limited exception that permits a court, in its discretion, to carve out a particular portion of a case and permit it to be concluded by a judgment, while at the same time continuing with the remainder of the case. The only portion that the rule permits to be carved out is an order that disposes of an entire claim or cause of action (including both liability *and* damages), or that adjudicates the litiga-

tion *entirely* as to one or more, but less than all, parties, or that adjudicates, on a motion for summary judgment, the principle portion of a money judgment claim under Rule 2–501(e).

*Id.* (Emphasis in original). Niemeyer and Schuett elaborate, at 452, on the truly exceptional nature of certification under subsection (b):

To obtain appellate review of an order that does not dispose of the entire action, the court must be willing to make the determination and direction required by this rule. *Only in limited circumstances, and only then when the court,* in its discretion, *determines that the policy of a piecemeal appeal outweighs factors that favor waiting for an appeal of the entire case, does the rule permit a trial court to enter a judgment as to part of a case by certifying it* in accordance with this rule.

*Id.* (Emphasis supplied).

### *Parallel Partial Resolutions: Less Than All Parties, Less Than All Claims*

As we prepare to evaluate the procedural status of this attempted appeal against the criteria of. Rule 2–602, several preliminary observations are appropriate. The judicial order that the appellant seeks to have treated as an appealable final judgment—the dismissal of the complaint with respect to three of the five remaining defendants—was one that "adjudicate[d] the rights and liabilities of fewer than all the parties to the action."

The earlier version of what is now Rule 2–602 provided only for the possible "entry of a final judgment upon one or more but less that all of the claims." Those earlier versions made no express reference to *parties* to the action and left some doubt, therefore, as to whether the strictures of the rule would operate to limit the appealability of decisions resolving the rights and liabilities of one or more, but less than all, of the *parties* to a law suit. Early on, however, the case law treated the phenomenon of multiple parties as indistinguishable from

that of multiple claims. In *Picking v. State Finance Corp.*, 257 Md. 554, 263 A.2d 572 (1970), the Court of Appeals applied what was then Rule 605a to foreclose the immediate appealability of a summary judgment in favor of one defendant while the action was still pending against two other defendants:

In the instant case the summary judgment adjudicated less than all of the claims as no judgment was entered either for or against Judge and Yates[.] We conclude that as the case now reaches us Rule 605a dictates that the summary judgment in favor of State Finance leaving unadjudicated the claims against the codefendants Yates and Judge is in effect an interlocutory judgment as to State Finance, with no right of appeal now existing.

257 Md. at 557, 263 A.2d 572. Judge Diggs explained the Court's reasoning:

There appears to be a difference of opinion among the several federal courts of appeals as to whether Federal Rule 54(b) applies where multiple claims, as distinguished from multiple parties, are involved. *This Court has heretofore adopted the view that the term multiple claims includes multiple defendants.* Here, where the decision of the trial court was to some but not all of the claims and where it purports to dispose of the rights of one but not all defendants, the case comes within the rule of these decisions. Upon this ground the appeal will be dismissed.

257 Md. at 557–58, 263 A.2d 572 (emphasis supplied). *See also Harkins v. August,* 251 Md. 108, 110–11, 246 A.2d 268 (1968); *Parish v. Milk Producers Association,* 250 Md. 24, 97–98, 242 A.2d 512 (1968); *Durling v. Kennedy,* 210 Md. 549, 553–54, 123 A.2d 878 (1956).

In its present manifestation, the Rule now makes explicit what had theretofore been merely implicit: Rule 2–602(a) expressly covers the adjudication of the rights and liabilities of "fewer than all of the parties." In *Hanna v. Quartertime Video & Vending,* 78 Md.App. 438, 442–43, 553 A.2d 752 (1989), we held an appeal to be premature when the rights of only some of the parties had been determined:

The case has yet to be tried as to the Lawsons and Crown. *An adjudication that determines the rights and liabilities of fewer than all of the parties is 'not a final judgment'* and is subject to 'revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.' Rule 2–602(a)(3).

(Emphasis supplied). In affirming, the Court of Appeals observed in *Quartertime Video & Vending v. Hanna*, 321 Md. 59, 64, 580 A.2d 1073 (1990):

As the Court of Special Appeals pointed out, the trial judge's position was clearly in error. *The rule applies to multiple parties as well as multiple claims.* Rule 2–602(a) provides that an order, 'however designated, that adjudicates ... the rights and liabilities of fewer than all the parties to the action: (1) is not a final judgment; (2) does not terminate the action as to ... any of the parties; and (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.' By its own terms, *Rule 2–602 applies to actions involving a single claim and multiple parties in which a judgment is entered as to fewer than all of the parties involved.*

(Emphasis supplied).[1]

The appeal now before us, therefore, is clearly controlled by Rule 2–602.

---

1. In *Planning Board v. Mortimer*, 310 Md. 639, 651–52, 530 A.2d 1237 (1987), Judge Adkins traced the Maryland and the federal histories of this development:

Former Rule 605a did not, in terms, mention multiple parties, although we have noted that its multiple-claims provision also included multiple parties.... In any case, Rule 2–602 now contains explicit language making it applicable to multiple parties as well as to multiple-claim cases.

... The development of Rule 54(b) supports this view. In 1961 Rule 54(b) was amended to its present form to expressly include multiple parties. Prior to 1961, Rule 54(b) encompassed only multiple claims, and orders in single-claim actions involving multiple parties could not be certified as final judgments.

### The Appellate Court Will Act Sua Sponte

■ We also note preliminarily that the failure of either party to this appeal to raise the issue of appealability is no impediment to our raising it *nostra sponte.* In *Harford Sands v. Levitt,* 27 Md.App. 702, 706, 343 A.2d 544 (1975), Judge Eldridge, on special assignment to this Court, stated emphatically:

> Neither the appellant nor the appellee presented the issue of whether this court has jurisdiction to decide the appeal. When, at oral argument, we raised the issue of our jurisdiction, counsel for both parties urged us to decide the case on the merits. However, the 'jurisdiction of this Court is statutory and may not be conferred by consent of the parties.' It is our duty to raise and decide, where appropriate, the issue of our jurisdiction over cases appealed to us.

*See also Blocher v. Harlow,* 268 Md. 571, 578, 303 A.2d 395 (1973).

In *Canterbury Riding Condominium v. Chesapeake Investors,* 66 Md.App. 635, 640, 505 A.2d 858 (1986), we again noted:

> Although neither side has questioned or discussed the jurisdiction of this Court to hear this appeal, we hold that this appeal is not properly before us and dismiss it.

And see Maryland Rule 8–602(a); *Biro v. Schombert,* 285 Md. 290, 293–97, 402 A.2d 71 (1979); *Jenkins v. Jenkins,* 112 Md.App. 390, 395–96, 685 A.2d 817 (1996).

### The Threshold Requirement of Express and Literal Certification

As we undertake, *nostra sponte,* our review of appealability, we conclude that the subject matter of the present appeal falls squarely within the coverage of subsection 2–602(a). We turn our attention to the required satisfaction of subsection 2–602(b).

The fact that the resolution 1) of one, but less than all, claims or 2) of the rights and liabilities of one, but less than all, parties might qualify, on its merits, to be treated as an appealable final judgment is not enough. There is first the

threshold requirement that the trial judge literally make the certification required by subsection 2–602(b). When that first step is missing, the merits need not be addressed and the appeal may be summarily dismissed.[2] *Blucher v. Ekstrom,* 309 Md. 458, 462, 524 A.2d 1235 (1987); *Shpak v. Oletsky,* 280 Md. 355, 358–60, 373 A.2d 1234 (1977); *Harlow v. Blocher,* 257 Md. 1, 3–4, 262 A.2d 58 (1970); *Harkins v. August,* 251 Md. 108, 110–12, 246 A.2d 268 (1968); *Flores v. King,* 13 Md.App. 270, 272–73, 282 A.2d 521 (1971); *Knight v. Tolson,* 10 Md. App. 311, 312–14, 270 A.2d 132 (1970).

With respect to the strict and literal nature of the certification requirement, Niemeyer and Schuett, *Maryland Rules Commentary* is again instructive, at 456.

> *When the court elects to certify* a ruling to make it a judgment that is appealable and enforceable, *it must do so in strict compliance with this rule.* The court must expressly determine in a written order that there is no just reason for delaying the entry of a judgment, and the order must direct the clerk to enter judgment under Rule 2–601. The ruling is not a judgment until the certification is made and until the clerk has proceeded through the mechanics of entering it under Rule 2–601(b).

(Emphasis supplied).

The dismissal of the appellant's complaint against Diehl, Unger, and Brumage, as we have noted, was appealed to us on two prior occasions. On each occasion, the appeal was dismissed because of a procedural flaw. It is the first of those dismissals that is here relevant. When the appeal was first before us, we dismissed it on our own initiative because it was self-evidently from a non-final judgment. On that occasion, the appeal was obviously and facially flawed because there had been no attempt at compliance with the threshold requirements spelled out by Rule 2–602(b) that the trial judge 1) "expressly determine in a written order that there is no just

---

**2.** Maryland Rule 8–602(e) provides that, under certain circumstances, the appellate court may, on its own motion, direct the entry of a final judgment even when the trial judge has failed adequately to do so.

reason for delay" and 2) actually "order the entry of a final judgment."

On remand, the appellant accordingly requested the trial judge to declare, pursuant to Rule 2–602(b), that the order dismissing the defendants Diehl, Unger, and Brumage was, indeed, a "final order" subject to immediate appeal. The trial judge issued the following order, precisely as the appellant requested it:

ORDERED that Plaintiff's Motion be and it is hereby GRANTED and that a final order dismissing Defendants, Carl Brumage, Wallace Diehl and Ernest Unger is hereby entered pursuant to Maryland Rules §§ 2–602(b) and 8–602(a)(1) and is appealable pursuant to the Md. Ann.Code, Courts Article § 12–301.

That represented facial compliance with at least part of Rule 2–602(b).

### The First Prong of Certification: "No Just Reason for Delay"

Subsection 2–602(b) is a two-pronged requirement and the appellant has satisfied only one of those two prongs. The trial court, by a written order, certified that its order dismissing Diehl, Unger, and Brumage as defendants was a final order and was appealable. What was completely overlooked, however, was the first part of subsection 2–602(b) which requires that "the court expressly determine in a written order that there is no just reason for delay."

In terms of the fatal nature of that flaw, the present case is procedurally indistinguishable from *Waters v. U.S.F. & G.*, 328 Md. 700, 616 A.2d 884 (1992). In that case, as here, the trial judge expressly determined in a written order that the partial judgment in question was final and appealable. There, as here, there was also a failure to make an *express* determination that there was no just reason for delay. The Court of Appeals held that the "trial court's order was not effective as a final appealable judgment because of the trial court's failure to make an express determination that there was no just reason

for delay." 328 Md. at 708–09, 616 A.2d 884. Judge Eldridge explained, 328 Md. at 707–08, 616 A.2d 884:

> Mr. Waters filed a motion pursuant to Maryland Rule 2–602(b) requesting that the trial court direct entry of a final judgment in favor of USF & G.... The trial court's order in this case merely stated that '[u]pon consideration of the plaintiff, John Waters['s], Motion for Final Judgment, and good cause shown, it is ... ORDERED, that the Motion be GRANTED.' *The court failed to make an express determination that there was no just reason for delay. Consequently, the trial court's purported Rule 2–602(b) determination was ineffective,* and there was no final appealable judgment in favor of USF & G.

(Emphasis supplied).

In *Blucher v. Ekstrom,* 309 Md. 458, 462, 524 A.2d 1235 (1987), the Court of Appeals dealt similarly with the same fatal procedural flaw:

> Under subsection (b), a trial court may order the entry of final judgment as to an entire claim or party, but less than all claims or parties, if the court in a written order makes an express determination that there is no just reason for delay. In this case, *neither the order of March 18, 1986, nor any earlier order contained the trial court's express determination of no just reason for delay.* When the order of appeal was filed on March 27, 1986, *there existed no appealable judgment in this case.*

(Emphasis supplied). *See also Parish v. Milk Producers Association,* 250 Md. 24, 97–98, 242 A.2d 512 (1968).

This Court addressed the same procedural flaw in *Robert v. Robert,* 56 Md.App. 317, 467 A.2d 798 (1983). Judge Lowe there observed:

> Not only must the direction for the entry of judgment be explicit, but also *the determination that there is no just reason for delay must be explicit.*
>
> * * * *
>
> [T]he rule by its carefully articulated mandatory language contemplates *an informed determination by the trial judge*

*that there is no reason to delay an appeal,* i.e., that some purpose will be served other that permitting piecemeal appeals. *Absent such express determination there is naught for us to review* because our jurisdiction is wanting.

56 Md.App. at 322–23, 467 A.2d 798 (emphasis supplied).

## *A Procedural Lifeboat: Maryland Rule 8–602(e)*

Prior to 1988, that flaw would have been irredeemably fatal. Since July 1, 1988, however, Rule 8–602(e) has made available at the appellate level some remedial measures that could repair a damaged Rule 2–602(b) certification. That subsection, in pertinent part, provides:

> (e) *Entry of judgment not directed under Rule 2–602.* (1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed the same day as, but after, the entry of the judgment.

Ours is a case in which the trial judge could, at least facially, have satisfied subsection 2–602(b). Of the four possible courses of action available to us in such a situation, the fourth (D) is not here pertinent. We decline to exercise the third option (C) of entering a final judgment on our own initiative and proceeding to consider the merits of the appeal because, for reasons to be more fully explained, we believe a certification of the judgment in this case as an appealable final judgment would have been an abuse of discretion in any event, even if subsection 2–602(b) had been facially satisfied.

We reject the second option (B) because we do not want to do anything that might encourage the trial court to make a "quick fix" under subsection 2–602(b) and to send the case

back up to us yet again. We exercise the first option (A), which is exactly the result that would have been reached if Rule 8–602(e) had never been promulgated.

### Some Attendant Dicta

Our holding, therefore, is that this appeal is hereby dismissed. For the guidance of the lower court, however, we will supplement that holding with some attendant *dicta* to forfend any possibility that another quick surface repair will be made and that this partial appeal might reappear before us.

Our *dicta* will consist of what our hypothetical disposition of this attempted appeal would have been even if, *arguendo,* there had been facial compliance with Rule 2–602(b).

### Even a Permissible Certification Is Subject to Appellate Scrutiny

Although certification of finality by the trial judge pursuant to Rule 2–602(b) is a necessary condition, it is not a sufficient condition to guarantee that the appeal will ultimately be heard. To cross the threshold of Rule 2–602(b) is not necessarily to satisfy Rule 2–602 in the eyes of the appellate court. Even a permitted exercise of discretion by the trial judge does not preclude close appellate scrutiny of that exercise of discretion. In *Diener Enterprises v. Miller,* 266 Md. 551, 555, 295 A.2d 470 (1972), Judge Digges noted for the Court of Appeals:

> [E]ven in those cases where the trial judge has discretionary authority under the rule, his exercise of discretion does not preclude review by an appellate court.

(Citations omitted).

In *Starfish Condominium Ass'n v. Yorkridge Service Corp.,* 292 Md. 557, 569, 440 A.2d 373 (1982), Judge Rodowsky cautioned that

> the trial court should then balance 'exigencies of the case . . . with the policy against piecemeal appeals and then only allow a separate appeal . . .' if this is one of 'the very infrequent harsh case[s].'

In *Allstate Insurance Co. v. Angeletti,* 71 Md.App. 210, 217, 524 A.2d 798 (1987), Judge Wenner similarly observed for this Court:

> [E]ven where the trial judge has the authority to direct the entry of final judgment on such an order, appellate courts have made it clear that *the trial judge must exercise considered discretion* before doing so and that *certification is not to be done routinely or often.*

(Emphasis supplied).

### *The Standard of Appellate Review*

As we review a trial court's exercise of discretion in this regard, moreover, the standard of appellate review is far less deferential than is generally the case with respect to discretionary rulings. The discretion that is exercised under Rule 2–602(b) is tightly circumscribed and an appellate court will not hesitate, on this issue, to substitute its judgment for that of the trial court. What is implicated is the ability of the appellate court, in questionable or borderline cases, to control its own docket. With respect to that tighter standard of appellate review, we observed in *Canterbury Riding Condominium v. Chesapeake Investors,* 66 Md.App. 635, 648, 505 A.2d 858 (1986):

> As we proceed to review this particular exercise of discretion, a preliminary word is in order on the subject of the exercise of discretion generally. Whenever that term of art is used, it connotes, by definition, some range within which discretion may be legitimately exercised one way or the other without constituting an abuse. *The notion of a range of discretion,* however, *is not an immutable and invariable criterion* in all of its myriad applications. The range of discretion frequently changes with the subject matter calling for the exercise of discretion. In handling the progress of a trial, for instance, as where the judge rules on a leading question, permits a continuance, or assesses the need for a mistrial, the range of discretion is very broad and the exercise of discretion will rarely be reversed. *On the issue now before us, by way of contrast, the discretionary range*

*is far more narrow. It is circumscribed by strong policy considerations and well-articulated guidelines.*

(Footnote omitted, emphasis supplied).[3]

### *The Strong Policy Considerations Against Piecemeal Appeals*

What are those "strong policy considerations" that circumscribe the exercise of discretion under Rule 2–602(b)? The energizing purpose of the Rule was tersely stated by Judge Bishop in *Russell v. American Security Bank,* 65 Md.App. 199, 202, 499 A.2d 1320 (1985):

The object of Md.Rule 2–602 is to prevent piecemeal appeals by providing that only where a trial court has fully adjudicated all the issues in a case will an appeal be permitted.

In *Harris v. Harris,* 310 Md. 310, 314–15, 529 A.2d 356 (1987), Judge Couch elaborated on the undergirding philosophy:

The appellate jurisdiction of the courts of this State is delimited by statute. Unless appeal is permitted by certain exceptions not here pertinent, an appeal will lie only from a *final judgment* entered by a circuit court.
\* \* \* \*

The statutory requirement of finality generally means that a party must raise all claims of error in a single appeal

---

**3.** In *Canterbury Riding Condominium v. Chesapeake Investors,* 66 Md. App. 635, 648 n. 4, 505 A.2d 858 (1986), the suggestion was raised that what is involved is actually not a possible abuse of discretion at all but really a countermanding authority on the part of the appellate court, on this issue, to control its own docket:

There is even some question as to whether an appellate court's power to countermand the order of the trial judge in this regard even calls for a finding that the trial judge abused his discretion. Because of the necessity for the appellate court to maintain some control over its docket and calendar, this may well be a situation where the trial judge makes the initial and tentative determination, subject always to the appellate court's authority to decline to accept the case until all aspects of the case have been finally adjudicated. It is not necessary for us in this case, however, to deal with this philosophically troubling, albeit less-than-earth-shaking, nuance of appellate review, for our determination would be the same under either standard.

following a final judgment on the merits. As noted by this Court on numerous occasions, the primary purpose of the final judgment rule is to prevent piecemeal appellate review of trial court decisions which *do not terminate the litigation.* By requiring litigants to consolidate all claims of error at the end of a lawsuit, the rule eliminates a succession of separate appeals which would repeatedly interrupt and delay lower court proceedings.

(Emphasis in original).

As early as *Durling v. Kennedy,* 210 Md. 549, 554, 123 A.2d 878 (1956), Judge Delaplaine spoke to the same effect:

The purpose of this rule, which is identically the same as Rule 54(b) of the Federal Rules of Civil Procedure, is to prevent piecemeal appeals as far as possible, and thereby avoid the confusion, delay and expense which would be caused by having two or more appeals in the same suit.

In setting out the policy considerations and the guidelines, *Diener* was very emphatic, 266 Md. at 555–56, 295 A.2d 470:

As a guide to trial judges, we suggest that when they contemplate utilizing the provisions of Rule [2–602(b) ] to enter an appealable judgment they exercise considered discretion. In doing so, they should balance the exigencies of the case before them with the policy against piecemeal appeals and then *only allow a separate appeal in the very infrequent harsh case.*

(Emphasis supplied).

### *Judicial Economy*

The strong policy that permeates Rule 2–602 is sometimes said to be a policy furthering the interests of judicial economy. That is perhaps too broad a statement. It may be described more accurately as a policy against piecemeal appeals. *Canterbury,* 66 Md.App. at 649, 505 A.2d 858, explained the policy consideration:

[W]e note initially, as did the *dicta* from *Diener Enterprises v. Miller, supra,* the strong policy considerations against piecemeal appeals. The observation from Wright, Miller &

Kane, *Federal Practice and Procedure: Civil 2d* § 2655, at 44, is illuminating:

> "Despite warnings that Rule 54(b) certificates should be granted sparingly, the district courts, with their somewhat limited ability to assess the burden on the caseload of the courts of appeal and who understandably are anxious to clear decided issues from their own dockets, sometimes seem to bow to requests from litigants to release claims for review without due deference to the policies underlying Rule 54(b)."

This strong policy consideration has always been an invigorating principle of Maryland law. *The purpose of the rule is to prevent piecemeal appeals as far as possible and to avoid thereby the confusion, delay, and expense which would be caused by having two or more appeals in the same suit.*

(Emphasis supplied).

Once an appeal, even if premature, is actually before us, it becomes easy to argue, as does the appellant here, that a resolution by us at this time of the issues before us would save valuable time for the trial court as it takes up the case again. That is not, however, the proper measure of judicial economy. In the most direct and immediate sense, Rule 2–602 seeks economy from the perspective of the appellate court, not from the perspective of the trial court.

Were we to address, with respect to the infliction-of-emotional-harm charge, the adequacy of the complaint to allege either 1) sufficiently outrageous conduct or 2) sufficiently severe emotional distress, it would affect that charge which is still pending against both of the remaining defendants. Were we to address, with respect to the wrongful-interference-with-employment charge, the adequacy of the complaint to allege the causation of the employment termination, it would affect that charge which is still pending against one of the remaining defendants. In *Canterbury*, however, we pointed out that a strong factor against entertaining a Rule 2–602(b) partial appeal is that it might "require us to determine questions that

are still before the trial court." 66 Md.App. at 654, 505 A.2d 858. At 66 Md.App. at 654 n. 5, 505 A.2d 858, we quoted, with approval, from 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d,* § 2659, p. 105:

> An appellate court also should not hear appeals that will require it to determine questions that are before the trial court with regard to other claims. Sometimes meaningful immediate review may not be possible because questions the appellate court might want to consider have not been adjudicated at the trial level.

Judges, appellate and trial, must steel themselves not to succumb too malleably to the *ad hoc* and plaintive cry of a particular appellant on a particular occasion. In the Supreme Court case of *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the opinion of Justice Brennan, concurring in part and dissenting in part, warned against the siren song of the sympathetic appellant that can so enticingly lure the eye away from the long-range goal:

> In many cases in which a claim of right to immediate appeal is asserted, there is a sympathetic appellant who would undoubtably gain from an immediate review of his individual claim. But lurking behind such cases is usually a vastly larger number of cases in which relaxation of the final judgment rule would threaten all of the statutory purposes served by the rule.

472 U.S. at 544, 105 S.Ct. at 2825.

Were we to accept this partial judgment for review, we would be exposing ourselves to a substantial risk of multiple and piecemeal appeals. Whatever we might do with respect to the dismissal of the case against these three defendants, two other defendants are still sitting at the trial table. Whatever their fortunes turn out to be at the trial level, it is highly likely that one side or the other will seek to bring that fragment of the total case back before us on some subsequent occasion. The same legal issues argued in this case could be

back before us. With respect to such a possibility, *Canterbury* observed:

> Another strong factor to be considered is the danger that the same issues will have to be considered by the appellate court on successive appeals. In the case before us, the first count charging negligent construction is still before the trial court. Whichever way that trial goes, the losing party will, in all likelihood, appeal. Many of the facts and issues which would be before us if we entertained the present appeal on its merits would be back before us again in that likely subsequent appeal.

66 Md.App. at 652, 505 A.2d 858. *Canterbury* also quoted with approval from Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 2654, pp. 37–38:

> Indeed, if the claims in an action are closely related and there is a risk of repetitive appeals, the district court may decide that this is a reason for delaying review and refuse to make the determination required by Rule 54(b).

66 Md.App. at 653, 505 A.2d 858.

Under the appellant's theory of the case, moreover, the facts and allegations involving the three defendants now tentatively before us are inexplicably intertwined with the facts and allegations against the two remaining defendants. It is the appellant's theory that all of the other defendants, individual and institutional, were recruited and enlisted by the defendant Diehl into a conspiratorial enterprise to retaliate against the appellant for her rejection of Diehl's sexual advances. The inevitable revisiting of the same factual scenario is one of the things the policy seeks to guard against. As Judge Wenner explained in *Allstate v. Angeletti*, 71 Md.App. at 222, 524 A.2d 798:

> Even if we were to review the verdict, ... it is obvious that a later appeal ... will involve close scrutiny of the same issues and much of the same evidence. In light of all of these factors, an appeal at this time clearly weighs against the interests of judicial economy and the policy against piecemeal appeals.

With respect to revisiting the same facts, *Canterbury,* 66 Md.App. at 653, 505 A.2d 858, quoted, with approval, again from Wright, Miller & Kane, § 2659, at 103–04:

It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be forced to consider again when another appeal is brought after the district court renders its decision on the remaining claims or as to the remaining parties.

*Canterbury* also pointed out, 66 Md.App. at 653, 505 A.2d 858, that another "factor to be considered is that the determination of the remaining count before the trial court might utterly moot the need for the review now being sought" and that a trial verdict might cause all "peripheral claims" to "evaporate."

In a larger sense, the judicial economy achieved by curbing piecemeal appeals also represents ultimate judicial economy from the standpoint of the trial courts. Trial court economy is best served by permitting a trial, once begun, to proceed directly to its conclusion rather than to be interrupted for months or more at a time by intermittent trips to Annapolis. During such interruptions, witnesses may be lost, lawyers may change, judges may retire or rotate to other judicial responsibilities. In *Jenkins v. Jenkins,* 112 Md.App. 390, 408–09, 685 A.2d 817 (1996), Judge Harrell examined the subject of judicial economy in this larger sense:

We acknowledge that dismissing this appeal is a harsh measure and essentially leaves Mr. Jenkins without an avenue of redress for the trial court's alleged error. The results, however seemingly inequitable, are necessary (perhaps quixotically) to promote the judicial system's interest in finality of judgment and confidence in the judicial disposition of disputes. The policy underlying the final judgment doctrine is compelling. It is, therefore, strictly enforced.

The final judgment doctrine is based on the theory that piecemeal appeals are oppressive and costly, and that optimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court.

> The underlying purpose of requiring a final judgment for appealability is to avoid constant disruption of the trial process, to prevent appellate courts from considering issues that may be addressed later in trial and to promote efficiency ... The requirement of finality is thus not a mere technicality, but is an important factor in maintaining a smoothly functioning judicial system.
>
> 4 Am.Jur.2d, *Appellate Review* § 86 (1995 & Supp.1996). We concede that strict compliance with the doctrine may result in unfair results in individual cases. We must endeavor, however, to preserve the integrity of the judicial system by maintaining the finality of judgments for the aggregate of cases.

In *Harris v. Harris,* 310 Md. 310, 315 n. 2, 529 A.2d 356 (1987), the Court of Appeals quoted with approval from the concurring and dissenting opinion of Justice Brennan in *Mitchell v. Forsyth,* 472 U.S. 511, 544, 105 S.Ct. 2806, 2825, 86 L.Ed.2d 411, 436–37 (1985), as it explained how the final judgment rule produces judicial economy for the appellate court and the trial court alike:

> The [final judgment] rule respects the responsibilities of the trial court by enabling it to perform its function without a court of appeals peering over its shoulder every step of the way. It preserves scarce judicial resources that would otherwise be spent in costly and time consuming appeals. Trial court errors become moot if the aggrieved party nonetheless obtains a final judgment in his favor, and appellate courts need not waste time familiarizing themselves anew with a case, each time a partial appeal is taken. Equally important, the final judgment rule removes a potent weapon of harassment and abuse from the hands of litigants.

*And see Sigma Reproductive Health Center v. State,* 297 Md. 660, 664–66, 467 A.2d 483 (1983); *Peat and Co. v. Los Angeles Rams,* 284 Md. 86, 90–91, 394 A.2d 801 (1978); *Warren v. State,* 281 Md. 179, 182–83, 377 A.2d 1169 (1977).

### *What Qualifies As "The Very Infrequent Harsh Case"?*

Even the strong policy against piecemeal appeals will, however, occasionally yield to what *Diener Enterprises v. Miller,* 266 Md. 551, 556, 295 A.2d 470 (1972), described as "the very infrequent harsh case." *Diener* spoke of the necessity for the appellate court "to determine if there is anything in the record which establishes the existence of any hardship or unfairness which would justify discretionary departure from the usual rule establishing the time for appeal." 266 Md. at 555, 295 A.2d 470.

In *Planning Board v. Mortimer,* 310 Md. 639, 648, 530 A.2d 1237 (1987), Judge Adkins described the limited nature of this exception:

*In the exceptional case,* the trial judge may decide that early appellate decision of a particular point is of sufficient importance, or that delay will produce sufficient hardship or unfairness, to outweigh the general policy against piecemeal appeals. The judge may then certify for immediate appeal an order that would otherwise be unappealable until the case terminates upon the disposition of all claims of all parties.

*The exercise of discretion is reviewable and should not be routinely exercised. A separate appeal under Rule 2–602 should be allowed 'only ... in the very infrequent harsh case.'*

(Emphasis supplied).

In order to weigh the policy consideration against "the very infrequent harsh case," it is helpful to know precisely what it is that makes the case harsh. Neither Md. Rule 2–602 nor Federal Rule of Civil Procedure 54(b) requires the trial judge to include a statement explaining the reasons for his action. Numerous federal appellate courts, however, have recognized the usefulness of such an explanation, especially where the reasons for the certification are unclear, and have encouraged the trial courts to state their reasons so that there may be meaningful appellate review. In *Canterbury,* we spoke of the difficulty facing an appellate court when it knows what is on

one pan of the balance scale but knows nothing about what might be on the other:

> Although we stop short of adding any rigid requirement or "precise rubric" when a trial judge certifies a case as final under Rule 2–602, we nonetheless find it more difficult to affirm the exercise of discretion where no reasons for that exercise are given. Here, the judge did not give us the benefit of his reasoning process. Here, moreover, we do not even have the benefit of an articulated argument, oral or written, from the appellant as it moved for certification. The interests of judicial economy and the policy against piecemeal appeals are readily apparent considerations militating against certification. We are left to speculate as to what the countervailing considerations might be. We agree with the observation of Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2659, at 114:

> "Whatever the factors considered, the court should provide a list of them with its decision so that there can be a meaningful review of the action taken."

66 Md.App. at 651, 505 A.2d 858.

*Maryland–National Capital Park and Planning Commission v. Smith,* 333 Md. 3, 7, 633 A.2d 855 (1993), cautioned that "the certification permitted by Rule 2–602 should be used sparingly so that piecemeal appeals and duplication of efforts and costs in cases involving multiple claims or multiple parties may be avoided." We have no indication that the use of certification in this case was sparing or carefully parsimonious. The admonishment in *Allstate v. Angeletti,* 71 Md.App. at 218–19, 524 A.2d 798, is particularly apt here:

> [W]e caution *Maryland judges* that, in the exercise of their discretion under Rule 2–602, they *should keep the concept of the "infrequent harsh case" firmly in mind.*

(Emphasis supplied).

In *Allstate v. Angeletti,* Judge Wenner noted that although one recent Supreme Court case had, in applying Federal Rule of Civil Procedure 54(b), shown a tendency to ease up on the

"infrequent harsh case" limitation on certification,[4] Maryland remains steadfast in its rigorous containment of the exception:

> Whatever the inclination of the Supreme Court may be, acting in its supervisory role regulating practice and procedure in the federal courts, we have found no similar inclination by our Court of Appeals to retreat from the suggestion that the certification procedure ought to be reserved for 'the very infrequent harsh case[s].' Nor are we persuaded that a retreat from that language is wise.

71 Md.App. at 218, 524 A.2d 798.

There is no remote intimation that this is the "infrequent harsh case" that the exception to the Rule was designed to accommodate. Even had this appeal facially satisfied Rule 2–602(b), we would still hold that the certification of the partial judgment in this case as final and appealable was an abuse of discretion. As *Lang v. Catterton*, 267 Md. 268, 272, 297 A.2d 735 (1972) explained:

> The right of appeal is not denied, but the time for taking the appeal is regulated in the interest of judicial administration and to prevent piecemeal appeals.

---

**4.** What the Supreme Court in *Curtiss–Wright v. General Electric*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) imposed on the federal appellate courts was a more deferential standard of review is assessing whether a trial judge had abused his discretion in certifying a case under Rule 54(b).

*Curtiss–Wright*, moreover, was an extreme case where a substantial economic hardship would have been worked by what promised to be an inordinate delay. In *Canterbury Riding Condominium v. Chesapeake Investors*, 66 Md.App. 635, 652, 505 A.2d 858 (1986), we discussed that factor in the *Curtiss–Wright* case:

> Prominent among the harsh and adverse effects that delay might sometimes work is a harsh economic effect. In *Curtiss–Wright Corp. v. General Electric Co.*, the Supreme Court, as it approved the exercise of discretion by the trial judge, gave a vivid example of what might qualify as a harsh economic effect. In that case, as Chief Justice Burger pointed out for the Court, the district court had determined that it might be many months, if not years, before the pending counterclaims might be decided; that the plaintiff's claim was liquidated and large ($19,000,000); and that the difference between the prejudgment and market interest rates would cause the plaintiff to suffer a severe daily financial loss unless certification was granted.

Pertinent here, as we close, are our closing words in *Canterbury*, 66 Md.App. at 654, 505 A.2d 858:

> As a general guideline to bench and bar, the words of *Cohen v. Owens & Company, Inc.*, 464 A.2d 904, 906–907 (D.C.App.1983), are highly appropriate:
>
>> This is at least the fourth appeal in the last six months which we had to dismiss on jurisdictional grounds for noncompliance with Rule 54(b). This fact suggests to us that the bar in general is not as familiar with that rule as it should be. Before rushing to file a notice of appeal from a trial court order that does not completely terminate a case, counsel should stop to consider whether the order is appealable. Patently dismissable appeals place an unnecessary and unwarranted burden on an already overburdened court.

***APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.***