*Adelakun v. Adelakun*, No. 33, September Term, 2024.  Opinion by Graeff, J.

**APPEALABILITY—INTERLOCUTORY ORDER**

**PENDENTE LITE CHILD SUPPORT & ALIMONY**

  An interlocutory order denying *pendente lite* alimony and child support is not a final judgment, and it is not appealable as an order for the payment of money pursuant to Md. Code Ann., Courts and Judicial Proceedings ("CJ") § 12-303(3)(v) (2023 Supp.).  Although interlocutory orders to pay alimony and child support are appealable orders, CJ § 12-303(3)(v) provides a right to appeal only from orders that require a party to pay a specific sum of money to another person.  The order here, denying the *pendente lite* request for alimony and child support, was not such an order.

Circuit Court for Howard County
Case No. C-13-FM-23-001251

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 33

September Term, 2024

_____

JENNIFER ADELAKUN

v.

ADENIYI ADELAKUN

_____

Graeff,
Tang,
Eyler, Deborah S.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: September 26, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from an order issued by the Circuit Court for Howard County denying a request made by appellant, Jennifer Adelakun ("Mother"), for *pendente lite* alimony and *pendente lite* child support from appellee, Adeniyi Adelakun ("Father"). Mother contends that the court erred in denying her requests.

For the reasons set forth below, we shall dismiss this interlocutory appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married on August 4, 2016. They have three young children together.

### I.

### Initial Filings

On July 19, 2023, Mother filed a Complaint for Absolute Divorce By Mutual Consent in the Circuit Court for Howard County. She asked the court to, among other things, grant her primary physical, and sole legal, custody of the children, child support (retroactively, *pendente lite* and permanently), and alimony (retroactively, *pendente lite*, rehabilitative, and permanently).[1] In her complaint, Mother alleged that she was unemployed and not currently earning any income. She stated that she required spousal support from Father, who earned "enough to provide spousal support . . . including payment of the mortgage on the Marital Home."

On August 14, 2023, Father filed a Counter-Complaint for Limited Divorce, seeking sole legal, and primary physical, custody of the children, or alternatively, shared physical

---

[1] "Pendente lite" is Latin for "while the action is pending." *Pendente Lite*, *Black's Law Dictionary* (12th ed. 2024).

custody, with Father "being the primary." Father also asked the court to award him child support for an amount "in accordance with the Maryland Child Support Guidelines, or an amount above the guidelines, if applicable." Father alleged that Mother was a licensed attorney, gainfully employed, and "capable of contributing to the support of the minor children."

## II.

### *Pendente Lite* Hearing

On October 31, 2023, the magistrate held a *pendente lite* hearing. Mother requested primary custody of the children, use and possession of the marital home, $8,200 a month from Father, in addition to his continuing to pay the mortgage on the marital home, and $50,000 in prospective attorney's fees. Mother testified that she earned $520 per month from a daycare center she owned, and this was "the only income that [she was] generating." She did not receive additional income, owner's draws, commissions, or bonuses from the company.

Mother also had an ownership interest in J. Anukem and Associates, a law firm that was "reorganized to be a consulting firm." She stopped practicing law in December 2021, and the new business had not yet received any contracts. The family's 2021 amended tax return indicated that the gross receipts from her law firm were $955,269, and there was a profit of $109,918, which she attributed as earned income. She testified that, at the time of the hearing, she was not receiving any income from the firm.

Mother had also been a CEO and project manager at Phase V Consulting, an IT consulting company. Mother's W-2 from 2022 indicates that Mother made $103,749.77

from this company. Mother testified that she stepped down from her CEO position in June 2023 because the business had "incurred a lot of debt," and she was unable to "keep up with it." She "transferred the business" to her business partner, Kim Kight.[2]

Mother initially testified that she owned three investment properties with Ms. Kight, but she did not receive any income from these properties. On cross-examination, Mother stated she owned seven investment properties. The amended financial statement Mother submitted into evidence noted ownership of four properties.

Mother's financial statement also listed her and the children's monthly expenses. These expenses included a "domestic assistance/housekeeper," who came to the home five days a week. Mother believed that Father was paying the mortgage on the marital home, and she "was told" that Father was providing the family's health insurance. She was not paying anything toward the mortgages on her investment properties. Ms. Kight was paying Mother's car note, cell phone bill, "and other expenses," and Ms. Kight had given her a $500,000 loan to "try to get J. Anukem and Associates up and running as a consulting firm" and "for living expenses." Mother had pre-paid the children's tuition expenses for the 2023-2024 school year, and she had pre-paid for a cruise scheduled for December 2023. Mother testified that she was unable to support herself or her children with her current income. On cross-examination, Mother stated that Ms. Kight and Ms. Kight's daughter were residing rent-free in the marital home, which was a 12,000 square-foot-home with seven bedrooms, eleven bathrooms, and two kitchens.

---

[2] Mother filed for divorce the next month, July 2023.

3

Father testified that he is a psychiatrist, and he owns his own business. Because Mother had filed several protective orders against him, one of which resulted in a brief incarceration on October 16, 2023, Father had lost "almost every single contract" with clients. He was on probation for one of his contracts, and another client with whom he had a contract had reduced his working time to two hours per week.

Father testified that he could not afford to pay for the housekeeper and nanny because, due to the events that had happened, he had lost contracts and was working reduced hours. His business paid for the mortgage on the marital home, approximately $10,500 per month, and he paid for the family's health insurance, approximately $2,400 per month. At the time of the hearing, Father owed $450,000 in student loans.

### III.

### Magistrate's Report and Recommendations

On December 6, 2023, the magistrate issued her report and recommendations. As relevant to this appeal, she denied Mother's requests for *pendente lite* alimony and *pendente lite* child support. With respect to Mother's current income, the magistrate noted that Mother testified that she earned $550 per month from the daycare that she owned, but documents that Mother provided showed that she earned $628 biweekly and was paid at a rate below the minimum wage of $7.85 per hour. The magistrate noted that Mother "transferred the business Phase [V] Consulting to the name of her business partner that lives with her," Kimberly Kight, "at the same time she filed for divorce." The magistrate then found, as follows:

[M]other's statements regarding a complete lack of ongoing income lack[] credibility and [are] not supported by other credible evidence. Mother's testimony regarding her income and employment are contradictory and not credible. The portions of Mother's testimony and evidence that is credible does not prove by a preponderance of the evidence that she has a [*pendente lite*] financial need.

With respect to Father's income, the magistrate found that:

[F]ather's statements regarding a decrease in income [are] more credible, but also lack[] substantial evidentiary support. Father states that his employment has been affected by the repeated and recent filings for protective and peace orders against him as well as a criminal complaint filed against him for which he was arrested. All of these filings are regarding the strife between the mother and father. None of the cases filed against him are proven to have been sustained against him. There is no peace or protective order against him and there is no criminal conviction against him. It is reasonable to believe that his employment has been affected by the recent significant court filings against him.

In conclusion, the magistrate found:

Prior to the initiation of the litigation between the parties, both parties earned substantial income from several business ventures each. They are each capable of earning significant income and each able to cover their own expenses during the [*pendente lite*] period. Neither parent has demonstrated a credible financial need for [*pendente lite*] alimony at this point in the litigation. The parties' recent history indicates this case as an above guidelines case regarding child support. Both parties are capable of supporting the children while they are in their custody. The parties should share in the payment of the housing for the benefit of the children but should not exchange child support under current circumstances.

There should be no, at this time, exchange of support between the parties for alimony or for child support. The parties should share in the cost of the children's housing for the benefit of the children.

The magistrate recommended that the parties be granted *pendente lite* joint legal, and shared physical, custody of the children; she recommended that the parties have custody at the family home on alternate weeks. The magistrate recommended that the

5

requests for *pendente lite* alimony and child support be denied, and Mother and Father each pay one half of the mortgage.

## IV.

### Exceptions to the Magistrate's Report and Recommendations

On December 15, 2023, Mother filed Exceptions to the Report and Recommendations of the Family Magistrate. Mother argued that the magistrate "erred by not making a finding as to the parties' respective incomes and the parties' expenses, and she abused her discretion in not awarding [Mother] *pendente lite* alimony and child support." Father filed a response in opposition.

## V.

### Exceptions Hearing and *Pendente Lite* Order

On February 13, 2024, the parties appeared before the circuit court for a hearing on Mother's exceptions. The court stated that it had thoroughly reviewed the Magistrate's Report and Recommendations, and the magistrate "clearly made findings as to the credibility of both parties regarding what they said and didn't say and proof they did or did not provide in regards to their income." With respect to Mother, the magistrate found that it was unclear what her income was.

Father noted that the magistrate found that Mother's statements regarding a complete lack of ongoing income lacked credibility and were not supported by other credible evidence. Counsel noted that the $6,500 a month Mother was paying for a housekeeper was excessive for a person who did not have a source of income. Mother also had "prepaid the private school preschool tuition for two of the children," approximately

$52,000, which indicated that there was not a *pendente lite* need. Additionally, Mother had prepaid "for a Disney vacation for the minor children and her," while also listing, as a recurring monthly expense, $1,200 for vacation, which is a lot for someone not making any income. Father concluded that "there was ample evidence before" the magistrate that demonstrated that Mother "had ample funds at her disposal, and there was not a *pendente lite* need for child support nor alimony."

Mother responded that she had been "liquidating assets in order to maintain the status quo because her income is not what it was years ago." She stated that it was "in the children's best interest that there be some sort of support being paid on a *pendente lite* basis."

At the conclusion of these arguments, the court stated that nothing had been shown to lead to the conclusion that any of the magistrate's findings were clearly erroneous. The court continued:

> [T]he Magistrate made specific findings in terms of the credibility and findings of the parties in terms of past incomes, and I think kind of lack of clarity as to where things are now. But did based on those first level findings, found at this time that . . . [Mother failed to meet her burden to prove] that there was a need on [her] part. That there was based on what had been paid for, I think that there was an ability to pay. And at the [*pendente lite*] level, you're looking at need versus ability to pay, and without a need, there is not a [*pendente lite*] alimony imposed. So, I do not believe that she abused her discretion in any manner in not awarding [*pendente lite*] alimony.
>
> In regards to the child support, there was varying testimony obviously different credibility findings made in regards to that. But that both parties were contributing to the children's needs and so on. And certainly, made findings about what assets obviously they had in their possession and that they could support the children. So, I don't believe there was an abuse of discretion in . . . not awarding the child support at this time. This is a [*pendente lite*] basis. It's not a permanent basis. And especially with

7

awarding the . . . nesting agreement of keeping the children in the family home and on a week-on/week-off basis. I think that came into her consideration. I do not believe that she abused her discretion in any manner.

And then subsequently, taking my own look at the view of what was presented at the Magistrate's hearing and the recommendations that she made, I do believe that they are in the best interest of the minor children. And I believe the provisions outlined are prudent for the current situation, the *pendente lite* period.

I am going to deny the exceptions.

On March 4, 2024, the court signed an order, adopting the magistrate's recommendation denying the requests for *pendente lite* alimony and *pendente lite* child support.

This timely appeal followed.

## DISCUSSION

Before addressing Mother's arguments, we must address whether this appeal is properly before us. "[U]nless constitutionally authorized, appellate jurisdiction 'is determined entirely by statute,' and therefore, a right of appeal only exists to the extent it has been 'legislatively granted.'" *Mayor & City Council of Balt. v. ProVen Mgmt., Inc.*, 472 Md. 642, 665 (2021) (quoting *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 485 (1997)). Pursuant to Md. Code Ann., Courts and Judicial Proceedings ("CJ") § 12-301 (2020 Repl. Vol.), parties have a right of appeal to this Court "from a final judgment entered by a [circuit] court," subject to exceptions not relevant here. "The purpose of requiring parties to await final judgment before taking an appeal is to avoid 'piecemeal appeals,' which may result in disruption and inefficiency." *Huertas v. Ward*, 248 Md. App. 187, 200 (2020).

8

To be considered a final judgment, an order from the court must satisfy the following conditions: "(1) 'it must be intended by the court as an unqualified, final disposition of the matter in controversy;' (2) 'it must adjudicate or complete the adjudication of all claims against all parties;' and (3) 'the clerk must make a proper record of it' on the docket." *Waterkeeper All., Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 278 (2014) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989)). *Accord Bartenfelder v. Bartenfelder*, 248 Md. App. 213, 230 (2020), *cert. denied*, 472 Md. 5 (2021). Here, the divorce proceedings are still pending, and accordingly, the circuit court's order denying *pendente lite* alimony and child support is not a final judgment.

"This Court does not acquire jurisdiction over an appeal unless it is taken from a final judgment or from an interlocutory order that falls within one of the exceptions to the final judgment requirement." *Bartenfelder*, 248 Md. App. at 229. There are three exceptions to the general rule that a party can appeal only from a final judgment. These exceptions are as follows: (1) an appeal from an interlocutory order specifically authorized by a statute; (2) an appeal from an interlocutory order that falls under the collateral order doctrine; and (3) an appeal permitted under Maryland Rule 2-602. *In re C.E.*, 456 Md. 209, 221 (2017). *Accord* Judge Kevin F. Arthur, *Finality of Judgments and Other Appellate Trigger Issues* 47 (3d ed. 2018).

Prior to oral argument, we issued a Show Cause Order asking the parties to address why this interlocutory appeal should not be dismissed for lack of jurisdiction. Mother responded by arguing that this Court has jurisdiction on two grounds. First, she argued that the appeal was proper pursuant to CJ § 12-303(3)(v), which authorizes an interlocutory

9

appeal of an order for the payment of money. Alternatively, she argued that, pursuant to our authority under Maryland Rule 8-602(g)(1)(C), this Court should direct entry of a final, appealable judgment. We will address both of these arguments, in turn.[3]

## I.

## An Order to Pay Money

CJ § 12-303 provides, in pertinent part, as follows:

> A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:
>
> * * *
>
> (3) An order:
>
> * * *

---

[3] At oral argument, after briefing and supplemental briefing, Mother raised an additional argument why this appeal should not be dismissed, asserting that the appeal could be proper under the collateral order doctrine. As the appellate courts have explained, an appealable collateral order: "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *Ehrlich v. Grove*, 396 Md. 550, 563 (2007) (quoting *Pittsburgh Corning v. James*, 353 Md. 657, 661 (1999)). *Accord In re Tr. Under Item Ten of Last Will & Testament of Lanier*, No. 737, 2024 WL 3593599, at *6 (Md. App. July 31, 2024). These "requirements are strictly applied," and appeals under this doctrine "may be entertained only in extraordinary circumstances." *Md. Bd. of Physicians v. Geier*, 451 Md. 526, 546 (2017).

Although we would be inclined to hold that a denial of an order requesting *pendente lite* alimony and child support is not appealable under the collateral order doctrine, as other jurisdictions have held, *see Fried v. Fried*, 501 A.2d 211, 215 (Pa. 1985); *Bowie v. Nicholson*, 705 A.2d 290, 292 (D.C. 1998), because this argument was not made until oral argument, we will not decide this issue. *See Oak Crest Vill., Inc. v. Murphy*, 379 Md. 229, 241 (2004) (It is well settled "that 'if a point germane to the appeal is not adequately raised in a party's brief, the court may, and ordinarily should, decline to address it'") (quoting *DiPino v. Davis*, 354 Md. 18, 56 (1999)); *Health Servs. Cost Rev. Comm'n v. Lutheran Hosp. of Md., Inc.*, 298 Md. 651, 664 (1984) ("[A] question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review.").

(v) *For* the sale, conveyance, or delivery of real or personal property or *the payment of money*, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court.

(Emphasis added).  Pursuant to this authority, the appellate courts have held that cases involving interlocutory orders for the payment of *pendente lite* child support and alimony are appealable.  *See, e.g.*, *In re Katherine C.*, 390 Md. 554, 557 n.4 (2006) (*pendente lite* order for child support); *Frey v. Frey*, 298 Md. 552, 556-57 (1984) (*pendente lite* alimony order); *Bussell v. Bussell*, 194 Md. App. 137, 147 (2010) (*pendente lite* orders for child support and alimony); *Lieberman v. Lieberman*, 81 Md. App. 575, 582-83 (1990) (portions of order regarding child support and related counsel fees).

In this case, however, the court did not issue an order for the payment of money. Rather, it denied Mother's request that Father be ordered to pay *pendente lite* alimony and child support.

Nevertheless, Mother contends that the court's order is appealable as an order for the payment of money, for several reasons.  First, she argues that the language adopted by the General Assembly in 1841, permitting appeals *for* the payment of money, was not restricted to affirmative relief because the 1828 edition of Webster's Dictionary shows that, at that time, the word "for" "was a broadly inclusive word," which "encompassed both positive and negative determinations."  Second, she asserts that "Maryland courts have always viewed" the statute's language "as encompassing the denial of monetary support in family law cases."  Finally, Mother argues that dismissing this appeal would "thwart Marylanders' justified expectations."

11

Father contends that Mother's appeal from the order denying her request for *pendente lite* alimony and child support is not an appealable interlocutory order. He argues that an appeal is appropriate as an interlocutory order only if it affirmatively requires the payment of money, asserting that, if "the legislature had intended to include appeals from cases involving the denial of a request for payment of money, it would have been easy to do so."

In construing CJ § 12-303(3)(v), we apply well-settled rules of statutory construction. "[T]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *State v. Brooke*, 262 Md. App. 207, 211 (2024) (quoting *State v. Bey*, 452 Md. 255, 265 (2017)). "The process begins with the plain meaning of the statutory language 'viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.'" *Id.* at 211-12 (quoting *Bey*, 452 Md. at 266). "The interpretive process ordinarily ends if the statutory language is unambiguous and consistent with the statute's apparent purpose." *Id.*; *see also State v. Johnson*, 415 Md. 413, 421 (2010).

As the Supreme Court of Maryland recently explained:

> Where statutory language "is ambiguous and thus subject to more than one reasonable interpretation, or where the language is unambiguous when read in isolation, but ambiguous when considered in the context of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Buarque de Macedo [v. Auto. Ins. Co. of Hartford, Conn.]*, 480 Md. [200,] 216, 280 A.3d 679 [2022] (internal quotation marks and citation omitted). In addition, we "check our interpretation against the consequences of alternative readings of the text[,]" *Bell v. Chance*, 460 Md. 28, 53, 188 A.3d

12

930 (2018), which "grounds the analysis." *In re O.P.*, 470 Md. 225, 255, 235 A.3d 40 (2020).

*Syed v. Lee*, No. 7, 2024 WL 3999041, at *23 (Md. Aug. 30, 2024).

We begin with the words of the statute, which permits an appeal from an order for "the payment of money." § 12-303(3)(v). At first read, the context appears to be clear, i.e., a party can appeal where the court has ordered a party to pay money. The cases we have found all include appeals involving those circumstances.

Mother contends, however, that when the General Assembly initially enacted legislation in 1841 authorizing an appeal from an interlocutory order, the word "for" had many meanings, including "against."[4] Therefore, she argues that this appeal, which denied a request for an order for the payment of money, is appealable.

To be sure, we often look to dictionary definitions, as a starting point, to identify the meaning of terms before considering "the statutory scheme as a whole." *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024). The most recent Webster's Dictionary defines "for" as, among other things, "a function word to indicate purpose" and "with respect to." *For*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/for

---

[4] Webster's Dictionary in 1828 included more than 30 definitions of "for," including: (1) "Against; in the place of; as a substitute or equivalent, noting equal value or satisfactory compensation, either in barter and sale, in contract, or in punishment"; (2) "In the place of; instead of; noting substitution of persons, or agency of one in the place of another with equivalent authority"; (3) "Conducive to; beneficial to; in favor of"; (4) "Leading or inducing to, as a motive"; (5) "Towards the obtaining of;" (6) "Against; in opposition to; with a tendency to resist and destroy; as a remedy *for* the headache or toothache"; (7) "With respect or regard to;" (8) "In favor of;" and (9) "With a view to obtain." *For*, *Am. Dictionary Eng. Language*, http://webstersdictionary1828.com/Dictionary/for (last visited Sept. 10, 2024).

13

(last visited Sept. 9, 2024).  To the extent that the dictionary definitions of "for" make the phrase "for the payment of money" ambiguous, we must "resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process."  *Westminster Mgmt., LLC*, 486 Md. at 645 (quoting *Bennett v. Harford Cnty.*, 485 Md. 461, 486 (2023)).

The Maryland appellate courts have extensively discussed the history of § 12-303(3)(v).  *See Anthony Plumbing of Md., Inc. v. Attorney General*, 298 Md. 11, 18-20 (1983); *Della Ratta v. Dixon*, 47 Md. App. 270, 277-86 (1980).  This Court explained that, at common law, appeals were allowed only from a final judgment rendered by a court of law.  *Della Ratta*, 47 Md. App. at 278.  The right to appeal an order from an equity decree was first conferred in 1718 by Act of the Provincial Assembly.  *Id.* at 278.  It was not clear, however, whether this right to appeal was limited to final orders or included "certain types of interlocutory orders, as was the practice in England."  *Id.* at 279.  In 1830, the General Assembly "attempted to end this confusion . . . by eliminating entirely the right to appeal from interlocutory orders" from equity, with the following provision:

> Provided always, that the *execution of any* decree or *order* of the chancery, or any county court *for* the sale, conveyance, or delivery of possession, of real or personal property, or *the payment of money*, or the bringing of money into court, or the appointment of a receiver, or the opening of any way public or private, from which the right of an immediate appeal is taken away by this act, shall not be suspended or staid, unless a prayer for an appeal be entered on the docket, or filed among the proceedings in the cause, and bond in such penalty as the chancellor, or county courts, (as the case may be) may prescribe, with good and sufficient security, to be approved by the chancellor or county court, shall be given.

14

*Id.* at 280 (emphasis added) (quoting 1830 Md. Laws 198-99). Thus, although there was no right to an immediate appeal of an interlocutory equity order for the payment of money, the court could stay the effect of such an order pending the conclusion of the entire case. *Id.*

In 1841, the General Assembly passed an act to restore appellate jurisdiction over certain interlocutory appeals from courts of equity. *Id.* The Act of 1841 stated, in relevant part, as follows:

> [S]o much of the first section of the said act, as takes away the immediate right of appeal from *any* decree or *order* of the court of chancery, or any county court sitting as a court of equity, *for* the sale, conveyance or delivery of real or personal property, or *the payment of money* . . . be, and the same is hereby repealed; and that from any such decree or order heretofore passed, or hereafter to be passed, the right of an immediate appeal is hereby given.

*Id.* at 280-81 (emphasis added) (quoting 1841 Md. Laws ix). This statutory right to appeal has been modified through the years, *id.* at 281-86, but the language at issue here has remained the same.

As the Supreme Court of Maryland explained in *Anthony Plumbing*, 298 Md. at 20, the history of § 12-303 "indicates a legislative intent to allow interlocutory appeals only from those orders for the 'payment of money' which had traditionally been rendered in equity," including "orders for alimony, child support, and related counsel fees." The Court stated: "The common thread in the . . . cases is that each involves *an order for a specific sum of money* which 'proceeds directly to the person' and for which that individual is 'directly and personally answerable *to the court* in the event of noncompliance.'" *Id.* at 20 (emphasis added) (quoting *Della Ratta*, 47 Md. App. at 285). The Court noted:

> These characteristics of a traditional equity order for the payment of money differ markedly from those of a typical judgment at law for the payment of money. The latter type of judgment "may settle the respective rights of the parties . . . but it does not purport to order anyone to do anything." *Ibid.* It is "not immediately enforceable," *id.* at 286, 422 A.2d 409.

*Id.* Indeed, "[t]he distinctive feature of the kind of equitable order described in *Anthony Plumbing* is that the court has available to it . . . the sanction of imprisonment for contempt." *Simmons v. Perkins*, 302 Md. 232, 236 (1985). If "imprisonment for contempt is not available to the trial court for any violation of its order," the order is not equitable in nature and, therefore, does not fall within the ambit of the statute. *Id.*

The legislative history of the statute and the appellate courts' interpretation of the statute lead to the conclusion that § 12-303(3)(v) provides a right of appeal only from interlocutory orders that require a party to pay a specific sum of money to another person.[5]

The conclusion that an interlocutory appeal from an order for the payment of money applies only to an order requiring a party to take affirmative action to pay is supported by the Supreme Court of Maryland's interpretation of the parallel provision in CJ

---

[5] Mother argues that language in *Chappell v. Chappell*, 86 Md. 532, 536 (1898), which was repeated in *Pappas v. Pappas*, 287 Md. 455, 462 (1980), indicates that Maryland courts have "always read" the statute "to mean orders granting *or denying* support." Both of these cases, however, addressed an interlocutory appeal from an order to pay alimony, not an interlocutory order denying a request for an order to pay. *Chappell*, 86 Md. at 536; *Pappas*, 287 Md. at 460-63. Mother also points to *Bussell v. Bussell*, 194 Md. App. 137, 147 (2010), where this Court stated that "a *pendente lite* order pertaining to payment of alimony or child support is immediately appealable" under CJ § 12-303(3)(v). In that case, however, as in all the cases we have found addressing an appeal of an interlocutory order for the payment of money, the order involved was one requiring the payment of a specific sum of money. *Id.* at 145-47. These cases do not support the conclusion, as Mother asserts, that Maryland courts have "always" read the statute as providing for an appeal of an order granting or denying alimony or child support.

§ 12-303(3)(v), providing for an appeal from an order "[f]or the sale, conveyance, or delivery of real or personal property." In *Washington City & P.L.R. Co. v. S. Md. R.R. Co.*, 55 Md. 153, 157 (1880), the Supreme Court of Maryland held that, although "an appeal will lie from an order directing the sale" of real or personal property, "the statute makes no provision for an appeal from an order refusing to authorize a sale before final decree, or from an order suspending or rescinding an interlocutory order of sale." *Accord McLaughlin v. Ward*, 240 Md. App. 76, 86 (2019) ("[A]n order '[f]or the sale, conveyance, or delivery of real . . . property' necessarily entails an order requiring that property be sold.").

If an order for the sale of property "necessarily entails" a requirement that property be sold, an order for the payment of money necessarily requires that money be paid. Each portion of CJ § 12-303(3)(v) requires performance of an action for which a person can be held in contempt for failure to comply.

Opinions from other jurisdictions support this conclusion. In *Whittington v. Magnante*, 30 N.E.3d 767, 769 (Ind. Ct. App. 2015), the Court of Appeals for Indiana held that an order denying a request for one party to pay expenses was not appealable as an order "for the payment of money" because the order did not "directly order one of the parties to pay a sum to another party." Similarly, in *Randall v. Randall*, 126 So. 484, 484 (Miss. 1930), the Supreme Court of Mississippi addressed whether Mrs. Randall could appeal the lower court's order denying her request for *pendente lite* alimony pursuant to a statute allowing an interlocutory appeal from an order "whereby money is required to be

17

paid." The court held that the denial of the request for pendente lite alimony was not appealable because the order did "not require the payment of any money by appellant." *Id.*

In *2012 Props., LLC v. Garland Indep. Sch. Dist.*, No. 05–15–01002–CV, 2016 WL 3902585, at *2 (Tex. App. July 14, 2016), the Court of Appeals of Texas addressed the appealability of an order pursuant to Tex. Tax Code Ann. § 34.04(e), which provides that "[a]n order under this section directing that all or part of the excess proceeds [of a tax foreclosure sale] be paid to a party is appealable."[6] Appellant argued that an order denying a request for payment of excess proceeds was appealable under this statute because the statute did not prohibit it. *Id.* at *3. The court rejected this argument under the canon of statutory construction, *expressio unius est exclusio alterius*, i.e., "the specific mention of one is the exclusion of the other," stating that the court "must presume that when the legislature authorized appeals of orders . . . directing that all or part of the excess proceeds be paid to a party, the legislature expressly prohibited appeals from other orders." *Id.* Thus, "orders directing that proceeds from a tax sale be paid to a party are appealable" but the order denying appellant's petition for excess proceeds was not appealable. *Id.*

These cases support our conclusion that an order is appealable as an order for the payment of money pursuant to CJ § 12-303(3)(v) only if it directly orders one party to pay a sum to another party. As indicated, the order here was not such an order.

---

[6] Although this is an unpublished opinion, the Texas Rules of Appellate Procedure allow for citation to unpublished civil opinions. *See* Tex. R. App. P. 47.7(b) cmt. ("All opinions and memorandum opinions in civil cases issued after the 2003 amendment have precedential value.").

Mother next asserts that policy reasons support allowing appeals from both orders to pay money and orders denying a request to pay money with respect to *pendente lite* claims for alimony and child support. It is well established, however, "that 'we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning.'" *Brownlee v. Liberty Mut. Fire Ins. Co.*, 456 Md. 579, 599 (2017) (quoting *Bellard v. State*, 452 Md. 467, 481 (2017)). A court

> may not "rewrite the law for [the General Assembly], no matter how just or fair we may think such a new law or public policy would be. The formidable doctrine of separation of powers demands that the courts remain in the sphere that belongs uniquely to the judiciary – that of interpreting, but not creating, the statutory law."

*Doe v. Cath. Relief Servs.*, 484 Md. 640, 675 (2023) (quoting *Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 454 (2004)).

CJ § 12-303(3)(v) unambiguously provides for an appeal from an interlocutory order for "the payment of money." It does not include an appeal from an interlocutory order that denies a request for the payment of money, and we cannot add that language in construing the statute. Accordingly the court's order here, denying the requests for *pendente lite* alimony and child support, was not an order for the payment of money, and Mother's interlocutory appeal is not authorized pursuant to CJ § 12-303(3)(v).

## II.

### Maryland Rule 8-602(g)(1)(C)

Mother next contends that, if this Court holds that this appeal "falls outside" of CJ § 12-303(3)(v), we "can and should direct the entry of a final appealable Rule 2-602(b)

19

judgment under Rule 8-602(g)(1)(C) as to the claims for *pendente lite* child support and alimony." She asserts that the circuit court "could have directed entry of a Rule 2-602(b) judgment on the claims for *pendente lite* child support and alimony" because these claims "are separate and distinct from the ultimate claims for child support and alimony to be awarded in the final judgment of divorce." Therefore, she argues, this Court should enter partial final judgment as a means of addressing the "extraordinary circumstances" of this case, which Mother describes as the circuit court "refusing to make necessary findings" regarding the parties' income "and then delaying trial for more than a year."

Father objects to this Court entering a final judgment pursuant to Rule 8-602(g)(1)(C). He argues that "[s]uch a request is a workaround to the statutory scheme of not permitting appeals from orders denying requests for payments of money." He further asserts that trial was delayed because of "Mother's numerous discovery failures," which ultimately led to the appointment of a discovery magistrate, and he contends that "Mother is not in financial peril."

Maryland Rule 2-602 permits a circuit court, in some circumstances, to enter as a final judgment an order that would not otherwise constitute a final judgment. It provides, in relevant part, as follows:

> **(a) Generally**—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
> (1) is not a final judgment;
> (2) does not terminate the action as to any of the claims or any of the parties; and

20

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

**(b) When Allowed—**If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2-501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

Subsection (b), therefore, "authorizes a trial court to enter a final judgment 'as to one or more but fewer than all of the claims or parties' when the court 'expressly determines in a written order that there is no just reason for delay.'" *Grier v. Heidenberg*, 255 Md. App. 506, 516 (quoting Md. Rule 2-602(b)), *cert. denied*, 482 Md. 149 (2022). The order entering a final judgment, however, must be one "which, absent the circumstance of multiple parties or multiple claims, would be final in the traditional sense." *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 568 (2010) (quoting *Plan. Bd. of Howard Cnty. v. Mortimer*, 310 Md. 639, 651 (1987)). *Accord Med. Mut. Liab. Ins. Soc. of Md. v. B. Dixon Evander & Assocs.*, 331 Md. 301, 308 (1993) (A circuit court's finding of no just reason for delay "only makes a final order appealable. It cannot make a nonfinal order … into a final order.") (quoting *Mortimer*, 310 Md. at 654).

If the circuit court properly exercises its discretion under the Rule and directs the entry of final judgment in a case to which the rule applies, the order is immediately appealable. *See In re Tr. Under Item Ten of Last Will & Testament of Lanier*, No. 737, 2024 WL 3593599, at *6 (Md. App. July 31, 2024) ("[I]mmediate appeals permitted under Rule 2-602(b)" are one of "three exceptions to the final judgment requirement."). Rule 2-602(b) certification, however, "should be used sparingly so that piecemeal appeals and

duplication of efforts and costs in cases involving multiple claims or multiple parties may be avoided." *Murphy v. Steele Software Sys. Corp.*, 144 Md. App. 384, 393 (2002) (quoting *Md.-Nat'l Cap. Park & Plan. Comm'n v. Smith*, 333 Md. 3, 7 (1993)). This process should be "reserved for 'the infrequent harsh case.'" *Id.* (quoting *Allstate Ins. Co. v. Angeletti*, 71 Md. App. 210, 218 (1987)). *Accord Heidenberg*, 255 Md. App. at 516 (quoting Arthur, *supra*, at 70, § 35).

Here, the circuit court did not enter judgment pursuant to Rule 2-602. Rule 8-602(g)(1), however, provides as follows:

> If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2-602 (b), the appellate court, as it finds appropriate, may (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative, or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment.

"Circumstances where an appellate court may" exercise its discretion by "certify[ing] an order are even more limited" than those available to the circuit court. *Waterkeeper All., Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 287 (2014). "[N]ot only is the appellate court limited to scenarios where the trial court could have certified the order, but the appellate court may not supersede the trial court's exercise of discretion where the trial court denies certification expressly." *Id.* at 287-88. "Courts that exercise discretion to certify a non-final judgment for appeal 'should balance the exigencies of the case before them with the policy against piecemeal appeals and then only allow a separate appeal in

22

the very infrequent harsh case.'" *Id.* at 288 (quoting *Diener Enters. Inc., v. Miller*, 266 Md. 551, 556 (1972)).

Although we have authority to enter judgment on our own initiative under Rule 8-602(g) in the appropriate case, the Supreme Court of Maryland has stated that we "should be reluctant to do so" when the circuit court was not asked to exercise its authority under Rule 2-602(b). *Smith v. Lead Indus. Ass'n*, 386 Md. 12, 26 (2005). The Court explained:

> If a party believes that the circumstances warrant an immediate appeal, the request should ordinarily be presented first to the trial court—the preferred "dispatcher"—for consideration. That court not only has greater knowledge than an appellate court regarding the overall effect of an immediate appeal but a greater interest in whether the case remaining before it should be "put on ice" while an interlocutory appeal proceeds. Except in the most extraordinary circumstance, predominantly where the problem of an open claim is a more or less technical one that was overlooked by the appellant when the appeal was noted and which, if spotted then, would likely have been corrected, the trial court should not be by-passed in this regard, as was deliberately done in this case.

*Id.*

Here, the parties did not ask the circuit court to exercise its authority under Rule 2-602(b).[7] As in *Smith*, it was clear that the case did not involve a final judgment, and given the remaining issues, the circuit court may not have "given favorable consideration to a request to enter judgment under Rule 2-602(b)." *Id.* at 27. Under the circumstances,

---

[7] Moreover, Mother did not ask this Court to exercise its discretion to enter a final judgment in her initial briefs.

we decline to exercise our discretion to consider the entry of a final judgment on an order that was not certified as a final judgment by the circuit court.[8]

Because the order appealed from is not a final judgment, and appellant has failed to show that it falls within one of the exceptions allowing interlocutory appeals, we will not consider the merits of the issue raised at this time. Accordingly, we shall dismiss the appeal.

**APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANT.**

---

[8] If Mother has additional evidence to support her request for support, she can ask the circuit court to exercise its discretion to revise the order prior to entry of a final judgment. *See Knott v. Knott*, 146 Md. App. 232, 258, 262 (2002); Md. Rule 2-602(a)(3).